## BENTON vs. J. & W. PRATT.

THIS was an action on the case, tried at the Madison circuit, in September, 1827, before the Hon. NATHAN WILLIAMS, one of the circuit judges.

In August, 1824, Seagraves and Wilson, of Allentown, in the state of Pennsylvania, by a verbal arrangement, agreed to purchase of the plaintiff 200 hogs and pay him the market price, provided he delivered them within three or four weeks and they had not been previously supplied. About the time for the delivery of the hogs, the plaintiff was proceeding with a drove of upwards of 500 to Allentown, and was overtaken on the road about 70 miles from Allentown by W. Pratt, one of the defendants, who also had a drove of hogs, about 200 in number. Pratt said he was going to Easton, and learnt from the plaintiff that he was taking his hogs to Allentown. By an arrangement between the parties, Pratt was permitted by the plaintiff to start with his drove from a place where they had both stopped for the night, and instead of going to Easton, drove his hogs to Allentown and offered them for sale to Seagraves and Wilson, who at first declined to purchase on account of their contract with the plaintiff; but on being told by a person who attended Pratt's drove, in the presence of Pratt, that the plaintiff was going on to Easton with his hogs to fulfil some contract, and after making some further inquiries, and not learning the plaintiff's approach to Allentown, they purchased Pratt's drove. On the next day the plaintiff arrived with his drove, and Seagraves and Wilson declined to purchase, having then as large a supply as they wanted. Seagraves and Wilson purchased of Pratt under the impression that

*An action on the case will lie for the assertion of a falsehood with a fraudulent intent as to a present or existing fact, where a direct, positive and material injury results from such assertion. Where a contract would have been fulfilled but for the false and fraudulent representation of a third person, an action will lie against such person, although the contract could not have been enforced by action.*

what they had been told of the plaintiff's going to Easton was true.    Had they known that the plaintiff was coming to Allentown, they would not have purchased of Pratt at any rate until the plaintiff's arrival; and if the plaintiff had arrived previous to their purchase of Pratt, and had offered his hogs at the same price, they would have purchased of him.    It was proved that J. Pratt, the other defendant, had directed W. Pratt to hurry on to Allentown if he killed half his drove, and fulfil the plaintiff's contract; and after the sale, boasted of the advantageous sale he had made, and that he was now *even* with the plaintiff for buying a lot of hogs which he had bargained for.    In consequence of loosing the sale to Seagraves and Wilson, the plaintiff was obliged to go further to procure a market, spent much time, and incurred considerable expense.

The declaration contains four counts.    In the *first* it is alleged that the plaintiff had made a contract or agreement with a firm by the name of Seagraves and Wilson, of Allentown, in the state of Pennsylvania, to sell and deliver to them a certain number of swine; that the plaintiff was on his way from his residence, in the county of Madison, in this state, with a drove of hogs, for the purpose of fulfilling said contract, when the defendants overtook him, they also having a drove of hogs; that the defendants made inquiries of him as to the place where he was going, when he informed them of his agreement with Seagraves and Wilson, and that he was going to Allentown in order to fulfil it; that the defendants, under pretence that their drove travelled faster than the plaintiff's, then requested permission from the plaintiff to pass him with their drove, which the plaintiff granted upon condition that the defendants should not go to Allentown with their drove, nor interfere with the contract of the plaintiff with Seagraves and Wilson, which they faithfully promised not to do; yet, (the declaration avers,) that the defendants, as soon as they had passed the plaintiff with their drove, pushed them on with great speed directly to Allentown, where they arrived two days before the plaintiff, and immediately upon their arrival offered their swine for sale to Seagraves and Wilson, who at first declined purchasing, on the ground that they had

agreed to purchase from the plaintiff, and confided in the fulfilment of the contract on his part; that the defendants *thereupon declared and asserted to Seagraves and Wilson, that the plaintiff had abandoned the intention of fulfilling his contract with them, and had given up the same to the defendants to fulfil and to take the benefit of;* whereupon, Seagraves and Wilson believing the assertions of the defendants, were induced to purchase from them, and did purchase, at a high price, as many as the said Seagraves and Wilson wished to purchase or could keep, whereby they were rendered unable to fulfil their said contract with the plaintiff; and when he arrived at Allentown, they utterly refused to take his swine, whereby the plaintiff lost the sale thereof and the profits that would otherwise have accrued to him, and was greatly damnified in other respects, &c. The count alleges that the said Seagraves and Wilson were ready and willing to purchase the plaintiff's swine and fulfil their contract, and would have done so had it not been for the fraudulent conduct of the defendant.

The *second count* is substantially like the first, omitting what is stated in the first count, in relation to the defendants passing the plaintiff on the road, and the conversation or agreement which there took place.

The *third count* varies from the second only in this, that it alleges the false representation made by the defendants to Seagraves and Wilson to have been, (not that the plaintiff had authorized them, the defendants, to fulfil the contract, but) that the said plaintiff had abandoned the idea and intention of fulfilling his said contract with said Seagraves and Wilson, and would not fulfil the same, &c.

The *fourth count* alleges that the false and fraudulent misrepresentation of the defendants was, that the plaintiff had given up all idea of fulfilling the contract, and had given the same to the defendants to fulfil, &c.

The defendants pleaded the general issue. The jury found a verdict for the plaintiff for $316 damages.

The defendants moved in arrest of judgment, or for a new trial.

*J. A. Collier*, for defendants. No sufficient cause of action is stated in either count of the declaration to entitle the plaintiff to recover ; but if there is, the judgment must be arrested for a *misjoinder* of actions. The first count is on a *contract*, the others in *tort*.

There is a variance between the proof and the declaration. *Both* defendants are charged as guilty of the deceit ; the proof affects but one of them. (12 *East*, 452.)

The contract of the plaintiff with Seagraves and Wilson was not obligatory upon the latter ; and allowing it was, the plaintiff has his remedy against them.

The agreement of the defendants set forth in the first count was not proved, nor was it shewn that the false representations imputed to them were made ; and if made, they were not such as subject the defendants to an action. (6 *Cowen*, 346.)

*J. A. Spencer*, for plaintiff. The plaintiff was entitled to his action. He had sustained damage by the act of the defendants, which he alleged was done fraudulently and with the intent to injure him. (11 *Johns. R.* 136. 13-*id.* 325.)

It is immaterial whether the contract with Seagraves and Wilson could or could not have been enforced. It is enough that its fulfilment was prevented by the fraud of the defendants. (*Cro. Jac.* 478. *Carthew*, 3, 4.) But if the plaintiff could have sought his remedy on the contract, he may, notwithstanding, resort to his action on the case against the defendants. Where a marriage contract is broken up by slander, an action lies against the slanderer, although the party has his remedy on the contract. So for enticing away an apprentice, case may be brought, though the remedy be perfect on the indenture.

The first count is in *tort* as well as the others, although it closely resembles a count in assumpsit. (*Wm. Black.* 848. 1 *T. R.* 274. 2 *Wils.* 319. 2 *Caines*, 217. 6 *Johns. R.* 138. 3 *Wooddeson*, 167.)

*By the Court*, SUTHERLAND, J. If the allegations in either of the counts in the declaration are true, the plaintiff has clearly sustained an essential injury from the act of the

defendants, which he alleges was done fraudulently and with the intent to injure him; and, upon principle, the law ought to afford him redress. The doctrines maintained by the judge in *Parley* v. *Freeman*, (3 *T. R.* 51,) appear to me abundantly to sustain this action. That, it will be recollected, was the case of a false affirmation made by the defendant, in relation to the credit and responsibility of one *Falch*, whereby the plaintiff was induced to sell to him, on credit, a large amount of goods, wares and merchandise.. Mr. Justice Buller says that fraud without damage, or damage without fraud, gives no cause of action; but where these two concur, an action lies. (3 *Bulstr.* 95.) It was admitted that no action could be supported for telling a bare, naked lie; that is, saying a thing which is false, without any intention to injure, cheat or deceive another person; and it was said that though every deceit comprehends a lie, yet it is more than a lie on account of the view with which it is practised, and the injury which it is calculated to occasion and does occasion to another person; and Mr. Justice Buller concludes by saying, that if a man will wickedly assert that which he knows to be false, and thereby draws his neighbor into a heavy loss, the law should compel him to pay for it.

Mr. Justice Ashurst says, in order to make a lie actionable, it must be accompanied by the circumstances averred in this case, namely, that the defendant, *intending* to deceive and defraud, made the false affirmation, in consequence of which the injury accrued to the plaintiff. Any lie, accompanied with those circumstances, he held to be the subject of an action, but not a false assertion, made at random, without any intention to hurt any body, the *quo animo* constituting the gist of the action. Lord Kenyon expressed his unqualified approbation of the principles advanced and maintained by his brethren.

In *Gallager and Mason* v. *Brunel*, (6 *Cowen*, 346,) all the cases applicable to this subject are considered, and the principles established in *Parley* v. *Freeman* are fully recognized. The action in that case was held not to lie, because the false representation which was alleged to have been made did not

NEW-YORK,
May, 1829.

Benton
v.
Pratt.

amount to an assertion of a fact or facts as existing at the time. The declaration alleged that the defendant, intending to injure and defraud the plaintiffs, and to induce them to sell certain goods to C. & H., falsely represented that he was willing to endorse the note of C. & H. It was held that the gravamen of this case was nothing more than that the defendant encouraged the plaintiffs to sell their goods to C. & H., and, as surety, promised to endorse their notes ; and that the intention of the defendant not to fulfil his engagement was not among the fraudulent acts which will render a party liable to an action ; that it was an attempt to make him responsible as for a tort, upon a promise which was void by the statute of frauds. In the case at bar there are no such difficulties ; there is the assertion, on the part of the defendant, of an unqualified falsehood, with a fraudulent intent as to a present or existing fact, and a direct, positive and material injury resulting therefrom to the plaintiff. This is sufficient to sustain the action. There is no mis-joinder of counts ; the first count contains a great deal of surplusage, and is very inartificially constructed ; but it is clearly in tort, not on contract. The motion in arrest must be denied.

There is no ground for interfering in this case with the verdict. The charge of the judge is not given, nor is it complained of. It must therefore be presumed to have been correct throughout. Nor does it appear upon what principle the damages were computed.

It is not material whether the contract of the plaintiff with Seagraves and Wilson was binding upon them or not ; the evidence established beyond all question that they would have fulfilled it but for the false and fraudulent representations of the defendants.

As to the fact of the defendants having made the false representations alleged in the declaration, it was for the jury to determine upon the evidence given. We must intend that they were properly instructed upon that point by the court ; and I think the verdict is fully warranted.

Motion in arrest and for new trial denied.