Battle, J.
 

 This is an action on the case at common law against die defendants for fraudulently aiding and assisting one Henry F. Wilson to abscond from the State, whereby the plaintiff, who had become his bail, was compelled to pay the debt for which the said Wilson had been arrested. It is admitted to be a case of the first impression. Neither the industry of counsel nor our own research has enabled us to find one, tire circumstances of which are similar to the present. The question then is, can the action be sustained
 
 1
 
 If it be new in the principle, then, though a wrong may have been done by the defendants, from which an injury has resulted to the plaintiff, it will require legislative action
 
 *146
 

 to
 
 remedy the mischief; but if it be new only in the
 
 instance,
 
 calling only for the application of a well established principle to. a new combination of circumstances, then it may be maintained, as has been well settled, at least ever since tire celebrated case of
 
 Pasley
 
 v. Freeman, 3 Term Rep. 51. We will proceed then to inquire whether there is any recognized principle of law, which can be called in to the support of this action.
 

 In the case of
 
 Bailey
 
 v.
 
 Merrell,
 
 3 Bulstr. Rep. 95, Choke, Judge, said that “ fraud without damage, or damage without fraud, gives no cause of action; but where these two do concur, there an action lieth.” This principle has been often since recognized by the most eminent Judges; and in the application of it to the great variety of frauds, which the wicked heart of man has conceived, no distinction has been made between frauds which consisted mainly in words, and those which have consisted mainly in acts. Without pretending to refer to all the cases on the subject of which the books give us an account, we will bring forward a few leading ones, which seem most apposite to our purpose. In
 
 Pasley
 
 v.
 
 Freeman,
 
 it was held by the Court of Kings Bench in England, that a false affirmation with regard to the credit of a certain person, made by the defendant, with intent to defraud the plaintiff, whereby the plaintiff was endamaged, was the ground of an action on the case; and that in such action, it was not necessary that the defendant should be benefited by the deceit, or that he should collude with the person who was. One of the Judges, Grose, dissented because, as he said, it was only a false affirmation, and that no case could be produced, where an action had been sustained for a mere falsehood; but the Chief Justice, Lord KenyoN, and Judges Buller and Ashurst held, that there being fraud in the defendant, and a resulting damage to the plaintiff he ought to recover.
 
 Langridge
 
 v.
 
 Levy, 2
 
 Mees. & Welsh Rep. 519, is a still stronger case. It was there decided by the Court of Exchequer, that the plaintiff might maintain an action ■ against the defendant, for falsely and fraudulently warranting a gun to have been made by Nock, and to be a good, safe and secure gun, and selling it as such to the plaintiff’s father, for the use of himself and his sons, one of whom, to wit, the plaintiff, confiding in the warranty, used the gun, whereupon it burst and wounded
 
 *147
 
 him. The j adgment was afterwards affirmed in the Exchequer Chamber, 4 Mees. & Welsh. 337, and the principle of it approved and acted upon in
 
 Pilmore
 
 v.
 
 Hood,
 
 5 Bing. New Cas. 97. In
 
 Upton
 
 v.
 
 Tail,
 
 6 Johns. Rep. 181, which was an action on the case for falsely and deceitfully recommending another as a man of property, whereby he was trusted and the debt lost, the case of
 
 Pasley
 
 v.
 
 Freeman
 
 was solemnly affirmed; and the Court, per Kent, Chief Justice, said “that case went not upon any new ground, but upon the application of a principle of natural justice, long recognized in law, that fraud or deceit, accompanied with damage, is a good cause of action. This is as just and permanent a principle as any in our whole jurisprudence.” Another case in New York may perhaps be regarded by some as having carried the principle almost too far. In
 
 Benton v. Pratt, 2
 
 Wend. Rep., 385, the facts were, that Sedgraves and Wilson, who lived in the town of Allenton, in the State of Pennsylvania, at a distance from the plaintiff, agreed verbally with him, that they would purchase a certain number of hogs from him at the market price, if delivered within a specified time, and if they should not have been previously supplied. While the plaintiff, about the time specified, was on the way to Allenton with the hogs, he fell in with the defendant, who was going to Easton with a drove of the same kind of animals. The defendant, learning the intention of the “plaintiff, made such arrangements as to get before him, and then hastened to Allenton, where he offerecfhis hogs to Sedgraves and Wilson. They at first declined, but by the assertions of the defendant, or of his men, made in his presence, that the plaintiff was going to Easton, and had given up his contract with them, they were induced to purchase from the defendant, which they would not otherwise have done; whereby the plaintiff lost the market, and was put to considerable expense. The declaration alleged that Sedgraves and Wilson would have fulfilled their agreement with the plaintiff, but for the false representations of the defendant. The Court decided the action to be maintainable, saying,
 
 “
 
 there is the assertion, on the part of the defendant, of an unqualified falsehood, with a fraudulent intent, as to a present or existing fact, and a direct, positive and material injury resulting therefrom to the plaintiff. This is sufficient to maintain the ac
 
 *148
 
 tion.” And the Court said further, that it was not material whether the plaintiff’s contract with Sedgraves and Wilson was binding on them, because the evidence showed that they would actually have fulfilled it, but for the defendant’s false and fraudulent representations.
 

 In Massachusetts the same principle prevails as a part of the common law.
 
 Lobdell
 
 v. Baker, 1 Met. Rep. 193, was an action on the case against the defendant for fraudulently procuring a minor to endorse a note, and then selling it to one, from whom the plaintiff, relying on the apparent validity of the endorsement, purchased. A verdict was found for the defendant, and the Court granted a new trial, saying “ that where a party affirms that which he knows to be false, or does not know to be true, to another’s loss, and his own gain, he is responsible in damages for the injury occasioned by such falsehood. This is a very just and reasonable principle, well established.” Upon the second trial, the jury found for the plaintiff, and the verdict was approved by the Court, who, after saying that one putting in circulation a note bearing an endorsement in blank, does, by necessary implication, affirm the endorser to be a person capable of binding himself by endorsement, added — “ if he supposed the endorsement immaterial, and believed the note good without it, he might not be actuated by any motive of gain to himself, or any actual intent to injure another; still the fact remains, that he has made a representation which, to his knowledge, is untrue — then file principle applies, that if one make a representation which is not true, and another, acting on the faith of its being true, is injured by it, he has his remedy against the party so making the false representation.” 3 Met. Rep. 469. In our own State, it was held in
 
 Erwin
 
 v. Greenlee, 1 Dev. & Bat. 39, that where the defendant in an execution fraudulently induced the sheriff to sell unsound property, and, at the sale, fraudulently represented it to be sound, an action on the case might be maintained against him by the purchaser. In all the cases which we have already considered, the fraud consisted principally in words — in false representations. We will now refer to a few where the gravamen of the action was the fraudulent acts of the defendant.
 
 Smith
 
 v.
 
 Tonstall,
 
 Garth. Rep. 3, is a case of high authority, having been af
 
 *149
 
 firmed in the House of Lords.' The facts of it were, that the plaintiff having obtained a judgment against one S., the defendant, procured S. to confess a judgment to himself, when nothing was due to him. This collusive judgment he caused to be satisfied by the sale of goods, on which the plaintiff, by his prior judgment, had acquired a
 
 lien;
 
 and the defendant having become the purchaser of the goods, carried them to distant parts, whereby the plaintiff lost his opportunity of having them taken, and thereby lost his debt. It was held that he might recover in an action on the case for the fraud. In
 
 Yates
 
 v.
 
 Joyce,
 
 11 Johns. Rep. 136, the plaintiff being the assignee of a judgment against one B., which was a
 
 lien
 
 on the property of B., was about to take out execution and seize a certain lot of land, when the defendant, knowing the existence of the judgment, pulled down. and carried away certain buildings, whereby the plaintiff was deprived of the benefit of his judgment. It was decided by the Court that the plaintiff might maintain an action on the case against the defendant for fraudulently removing the property of B., and converting it to his own use, with intent to defeat the judgment of the plaintiff. The Court admitted that the case was one of the first impression, yet- they did not hesitate to hold that the plaintiff might recover the damages which he had sustained by the fraudulent acts of die defendant. In
 
 Adams
 
 v.
 
 Paige, 7
 
 Pick. Rep. 542, the decision was
 
 u
 
 that an action on the case for a conspiracy will lie in favor of a creditor against his debtor and a third person, who have procured the property of the debtor to be attached, upon a suit for a fictitious debt, and applied it to the payment of the judgment obtained in such suit, in order to prevent
 
 bona fide
 
 creditors from obtaining payment out of the property — the plaintiff having subsequently attached the same goods, and'not being able to procure payment of his debt, in consequence of the prior attachment and the debtor’s being insolvent.”
 

 In all the cases to which we have referred, and in many others to which we might refer, however different the circumstances, the principle upon which they were decided was die same; to wit, that where there was fraud by the defendant, either in word or deed, resulting in damage to the plaintiff, he might sustain an action on the case for such damage. We are now to consider whether
 
 *150
 
 (he circumstances of the case before us are such, that the same principle can be applied to them. These circumstances are, that in May, 1843, Baily deYoung, being creditors of Henry F. Wilson, a resident of the county of Davie, issued a writ of
 
 capias ad respondendum,
 
 against him, returnable to the ensuing (May) Term of the County Court of that county. The writ was placed in the hands of the plaintiff, who was then sheriff, and was by him executed on the said Wilson, for whom he, by failing to sake bond, became special bail. Wilson, the debtor, to avoid the payment of his debts, afterwards, and before judgment was obtained against him, absconded from the State — the defendants having fraudulently aided and assisted him in so doing; and in consequence thereof, the plaintiff, as the bail of the said Wilson,, was compelled to pay the. debt to Baily & Young. Here we find a fraud by the defendant, resulting in damage to the plaintiff. Why may not he recover for it? It is answered by the
 
 defend?
 
 ant’s counsel, that the damage, though it may have been a consequence of the fraudulent acts of the defendants, was too remote, indefinite and contingent, to be tire groundwork of an action; and for this he cites, and greatly relies upon the case of
 
 Lamb
 
 v.
 
 Stone,
 
 11 Pick. Rep. 527. The question in that case arose upon a motion to arrest the judgment, after a verdict for the plaintiff The allegations contained in the declaration were, that the plaintiff had a just debt due him from one Thompson; that I he latter had property liable to attachment, sufficient to pay this debt; that the defendant took a fraudulent conveyance of this property; that Thompson had absconded from the State; that the plaintiff had not been able to arrest him, to attach his property,, or otherwise obtain satisfaction of his debt; and that the acts done by the defendant were done with the intent to defraud the plaintiff, by preventing him from securing or getting satisfaction of his debt.. The Court arrested the judgment and assigned several reasons therefor, one of which was that now urged by the defendant’s counsel. The Court said that “ the injury complained of is too remote, indefinite and contingent. To maintain an action for the deceit or fraud of another, it is indispensable that the plaintiff should show, not only that he has sustained
 
 damage,
 
 and that the defendant has committed a
 
 tort,
 
 but that the
 
 damage
 
 is
 
 *151
 
 the clear and necessary
 
 consequence
 
 of the tort, and that it can be clearly defined and ascertained. What damage has the plaintiff sustained, by the transfer of his debtor’s property? He has lost no lien, for he had none.' No attachment has been defeated, for none had been made. He has not lost the custody of his debt- or’s body, for bo had not arrested him. He has not been prevented from attaching the property or arresting fire body of his debtor, for he had never procured any writ of attachment against, him. He has lost no claim upon, or interest in, the property, for he never had acquired either. The most that can be said is, that he intended to attach the property, and the wrongful act of the defendant has prevented him from executing this intention. Is this an injury for which an action will lie ? How can the secret intention of the party be proved? It maybe, he would have changed this intention. It may be, the debtor would have made a
 
 bona fide
 
 sale of the property to some other person; or that another creditor would have attached it; or that the debtor would have died insolvent, before the plaintiff would have executed his intention. It is therefore entirely uncertain whether the plaintiff would have secured or obtained payment of his debt, if the defendant never had interfered with the debtor or his property. Besides, his debt remains as valid as it ever was. He may yet obtain satisfaction from the property of his debtor, or his debtor may return and pay him.” In a previous part of the opinion, the Court had said,
 
 “
 
 if the sale was fraudulent, it might be avoided by the creditors, and the property was liable after, as well as before, the conveyance. The fraud could be established quite as easily in a suit for the chattels themselves, as in the present case. There is no averment that the defendant had concealed the property, removed it out'of the commonwealth, or in any other way so disposed of it, that it could not be attached. But even if it were so, and the property could not be come at to be attached specifically, yet it might be attached in the defendant’s hands by the trustee process.” We have quoted thus largely from the opinion, to show the true ground upon which it was placed, and upon which only it can be sustained. That ground was, that the plaintiff had other effectual remedies against the property of the debtor, of which the fraud of the defendant had not deprived
 
 *152
 
 him; and that, consequently, he was not endamaged to the amount of his debt, or to any other certain definite amount. How are the facts in regard to our case? Here the plaintiff, by becoming special bail, as he had a right to do, as was decided in
 
 Barker
 
 v.
 
 Munroe,
 
 4 Dev. Rep. 412, became in a certain sense the custodian of the debtor’s body, of which no person had the right to deprive him; and yet the fraudulent acts of the defendants did deprive him of it, in consequence of which, he had to pay the debt to Bailey & Young. Here is a
 
 tort
 
 followed by
 
 damage.
 
 It seems to us that the
 
 damage
 
 is the clear and necessary
 
 consequence of
 
 the tort, and that such damage can be clearly defined and ascertained. There is a case in our own reports, to wit,
 
 Gardiner
 
 v.
 
 Sherrod,
 
 2 Hawks 173, which we ought not to overlook. That, was an action in which the plaintiff declared in two counts, one at common law, and the other under the Statute, against the defendant for fraudulently aiding a debtor to escape, by means whereof the plaintiff lost his debt. The first count alleged that one Robert Sherrod was indebted to the plaintiff in a bond for $200 : that the defendant fraudulently assisted him to abscond from the county, with tire intent to hinder and delay the plaintiff in the collection of his debt, and that, by such fraudulent conduct of the defendant, die debt was lost. Upon the trial, the juiy under the charge of the Court, found a verdict for the plaintiff on the first count only, and upon appeal, this Court held that the action could not be sustained upon the facts stated in that count. They said that the plaintiff did not show how or to what extent he was injured — that it was not alleged that the debtor had any property, or that the plaintiff had arrested, or would have arrested him, had he remained; and that consequently it did not' appear, from his own showing, that he had been damaged. There is an obvious difference between that case and the present. Here the declaration states, and the facts show, that the debtor had been arrested, and that the plaintiff had become his special bail, and as such, responsible for the production of his body. His responsibility did not depend upon the fact of the debtor’s having property. It was the . same, whether he had property or not. The declaration states, and the testimony shows, that the defendants fraudulently aided and assisted the debtor to abscond,
 
 *153
 
 in consequence*of which, tlie plaintiff had the debt to pay to the creditors. We therefore conclude, both from reason and authority, that the plaintiff, as the bail of Henry P. Wilson, has a good cause of action against the defendants, for fraudulently assisting the said Wilson to escape; and that the judgment must be affirmed, unless some of the other objections, appearing in the bill of exceptions, can avail to prevent it.
 

 One of these objections is, that the defendants did not know that the plaintiff was the bail of Wilson, and therefore could not intend to defraud him; and that, without such intent, he could not sustain the action. We think it was sufficient to show that the fraudulent act was done with the intention of hindering and delaying Daily & Young in the collection of their debt. It is no defence to the defendants, that the damage, flowing from their wrongful act, fell upon the bail, instead of the creditors, of the absconding debtor. If one throws a log in the public highway, with the intention to injure a particular individual, and another person passes along, and is injured by falling over it, it is common learning that he may sustain an action on the case against the wrong doer, though there was no intent to injure him. The case of
 
 Erwin
 
 v.
 
 Greenlee,
 
 above referred to, is another instance of the application of the same principle. There the defendant, Greenlee, could not know who was to be the purchaser, and therefore did not intend to injure airy person in particular. ¡So in tire noted case of
 
 Scott
 
 v.
 
 Shepard,
 
 2 Black. Rep. S92, whether the proper form of action was trespass, as held by tire Court, or case, as contended for by Judge Blackstone, the tort-feasor certainly did not know who was to be hurt by the lighted squib, which he threw into the market house, where a large concourse of people were assembled.
 

 Another objection is, drat there is a variance between the declaration and proof, as to the manner in which the plaintiff became the bail of the debtor. . This we think is fully answered by the case of
 
 Barker
 
 v.
 
 Munroe,
 
 above cited. There Gaston, Judge, in delivering the opinion of the Court, upon the’ construction of the Statute relating to bail, said, “ upon this Statute a construction early obtained, that the Sheriff had a right to become thus special bail in every case, and this construction has ever since steadily ad
 
 *154
 
 hered to and followed out to its necessary consequences.” If this be so, and it has been too long and too well settled to be doubted, it can make no difference in the pleading or proof, how the plaintiff became bail.
 

 Still another objection has been urged in this Court, that it ought to have been stated in the declaration, and proved on the trial, that a
 
 scire facias
 
 had issued against the plaintiff as bail. This statement, we think, was unnecessary. It was sufficient to allege that the plaintiff became, and was liable as bail, and that the debtor absconded, whereby he was compelled to pay the debt —without setting forth in detail the legal proceeding against him, by which he was compelled. That he was so compelled to pay,- and did pay tire debt to Baily & Young, in consequence of his liability as the bail of the absconding debtor, sufficiently appears in the declaration, which is an answer to the motion in arrest, made in the Court below. Upoij the rvliole case then, we do not find any thing in the bill of exceptions, or the record, which entitles the defendants to a reversal, or an arrest of the judgment, and it must be affirmed.
 

 Per Curiam. Judgment affirmed.