WILLIAM WHITESIDE AND JAMES WHITESIDE, RESPONDENTS, *v.* SOLOMON HYMAN, APPELLANT.

*Fraudulent representations — compromise induced thereby — remedy of creditor — measure of damages — evidence.*

Where a creditor is induced to compromise a debt upon the receipt of fifty cents on the dollar, by means of the false and fraudulent representations made to him by the debtor, that another of his creditors has agreed to accept such compromise, the creditor may, upon discovering the falsity of such representation, maintain an action against the debtor to recover the damages sustained by reason thereof.

As in such an action the damages sustained by the plaintiff depend upon the ability of the debtor to pay more than a moiety of his debts, it is competent to ask witnesses for the defense whether the defendant held property or assets sufficient to pay over fifty cents on the dollar of his liabilities.

APPEAL from a judgment in favor of the plaintiffs, entered upon the verdict of a jury.

The action was brought to recover the damages sustained by the plaintiffs by compromising a debt owing to them by the defendant, which compromise they were induced to enter into by reason of false and fraudulent representations made to them by the defendant.

Upon the trial a witness called in behalf of the defendant was asked by his counsel, "state whether your father (the defendant) had property or assets sufficient to pay over fifty cents on the dollar of his liabilities?" which question was, upon the plaintiff's objection, disallowed.

*M. L. Townsend*, for the appellant.

*Dennis McMahon*, for the respondents.

DANIELS, J.:

The plaintiffs were creditors of the defendant, who endeavored to compromise his debts, because of his inability to pay them in full. He applied to the plaintiffs to become parties to the composition for the amount of fifty per cent of the sum owing to them. They doubted the good faith of his failure, and were indisposed to assent

to that arrangement. For the purpose of overcoming their doubts, and inducing them to accept his offer, it was alleged that he represented that another firm of his creditors had agreed to accept the compromise proposed, and to discharge him from liability for it, and that, relying upon the truth of the representation made, and what they believed to be the judgment of that firm, they were induced to make the same agreement, and did agree to receive fifty per cent in full of the indebtedness due to them, and afterwards surrendered up the notes held by them for that consideration. This was alleged to have been fraudulent, and the representation made to have been false, and evidence was given upon the trial tending to prove the existence of these facts.

The complaint alleging them was plainly one for fraud, and for that reason the plaintiffs were not at liberty to maintain their action upon any other ground, even if they had proposed to do that. (*Barnes* v. *Quigley*, 59 N. Y., 265; *Graves* v. *Waite*, id., 156.) They could not recover for the debt, although its existence appeared by the allegations which were made, because the case disclosed by them was based upon a distinct and different theory. It was for damages sustained by means of the fraudulent representations relied upon, and not for the portion of the debt appearing to remain unpaid, and it was upon that principle that the action was tried and maintained.

As the proof showed the case it could have been sustained in no other form, because it distinctly appeared that in the final consummation of the transaction the compromise was adjusted by Henry Hyman, the defendant's brother, and the account was assigned and the notes formally delivered to him. It was stated to one of the plaintiffs that this person was buying up all the claims, and he then took the check and notes offered for the fifty per cent, and in return assigned the account and delivered over the notes held by the plaintiffs against the defendant. This was also, in substance, sustained by the evidence of the plaintiff, with whom the business was transacted. The account he gave of it was, that "Hyman's son brought the notes, and gave them to my book-keeper, according to the agreement in the paper, and then I surrendered my own notes. In payment for those notes I received a check for a part of the money, and three notes for the balance." The check and notes were pro-

duced. They were drawn by Henry Hyman, and the notes indorsed by the defendant. As this statement showed the business to have been completed, the plaintiff's debt was extinguished by means of it, and it appeared that Henry Hyman, to whom the account and the notes held against the defendent were transferred by the plaintiffs, had afterwards settled with him for fifty cents on the dollar of their amount.

Under these circumstances the plaintiffs were not in a condition to recover on the original indebtedness. The evidence of each party showed that to have been effectually discharged. Consequently the plaintiffs, if they could recover at all, were necessarily limited to their damages for the fraud, if that, in truth, had been perpetrated by the defendant. The evidence given sufficiently tended to sustain the position that it had, to render that a proper subject for the consideration of the jury. And if its existence were satisfactorily established, as it may be presumed from the verdict rendered that it was, then the plaintiffs were entitled to such damages as it had occasioned them. Their claim proceeded upon the theory that they had been induced to surrender their demands against the defendant for less than they would otherwise have received for it, because of his fraudulent representations concerning the terms of his settlement with the other firm, and if that were true, there seems to be no good reason why they should not be allowed to maintain such an action as they instituted for their indemnity. It proceeded upon the allegation that a fraud had been committed, which had resulted in damage to them; and that has often been held to be sufficient to maintain the right of the defrauded party to recover. If one person makes a representation which he knows to be false to another, intending to induce him to act upon it, and he, believing it to be true, does act upon it and thereby sustains a loss, he may maintain an action for the recovery of compensation for such loss against the party by whose misrepresentation it was produced, and it can make no difference, in principle, whether the loss be produced by parting with money or other property, or assigning and surrendering a subsisting indebtedness. The legal elements of the case are the same in one instance as they are in the others. They all alike involve damage to the party by means of the fraudulent deception made use of. (*Attwood* v. *Small*, 6 C. & F., 404; *Moens* v. *Heyworth*, 10 M. & W., 147;

*Gerhard* v. *Bates*, 2 E. & B., 488; *Farrington* v. *Bullard*, 40 Barb., 512 and 516; *Willink* v. *Vanderveer*, 1 id., 599.)

. And in *Benton* v. *Pratt* (2 Wend., 385), a contract not capable of being enforced by action, which was not, but would have been performed but for certain false and fraudulent representations, was held sufficient to render the defendant, who made them, liable. The same principle was also applied to the case of a compromise fraudulently induced in *Baker* v. *Spencer* (47 N. Y., 562), and it is quite analogous to that which has been applied to the fraudulent negotiation of an undelivered promissory note, rendering the maker liable for its payment to a *bona fide* holder of it. (*Neff* v. *Clute*, 12 Barb., 466; *Miller* v. *Manice*, 6 Hill, 114; *Decker* v. *Mathews*, 2 Kernan, 313.)

But while these authorities will sustain the right of the plaintiffs to recover for the fraud, upon that being established by them to the satisfaction of the jury, the extent of that right must be necessarily limited to such damages as it has occasioned them. That may be greater or less, according to the ability of the defendant to pay the whole or a part of the residue of their debt at the time when it was surrendered by them, or his probable ability to do so afterwards while they might have otherwise held it against him. It was the value of the unpaid moiety of their debt which they lost by means of the fraud, if that in fact had been perpetrated, and their right to recover that, with interest, was the extent of the indemnity which the law would afford them. To ascertain that, an investigation of the defendant's circumstances at the time of the settlement was entirely proper, and for that purpose the question was competent whether the defendant had property or assets sufficient to pay over fifty cents on the dollar of his liabilities. It manifestly had relation to his condition when the compromise was effected, and as its form was in no way objected to, an answer to it should have been, but it was not allowed.

The objection taken to the inquiry was a general one, which simply presented the point of its competency, and the decision by which that objection was sustained was erroneous. The exception thereupon taken by the defendant was a valid one, and its correction will require another trial of the action.

Several exceptions were taken to the charge, but only one of them

seems to have been tenable. That was to the refusal to charge that the plaintiffs could not recover upon the original notes and account. The evidence showed that no such recovery could be had in the case, and the jury should have been so instructed by the court. The case was a novel one, and it cannot be a source of surprise that another trial of it has become necessary.

Upon these two points the defendant has just cause of complaint, and to rectify them the judgment should be reversed, and a new trial ordered, with costs to abide the event.

DAVIS, P. J., and BRADY, J., concurred.

Judgment reversed, new trial ordered, costs to abide event.