JOHN REED, RESPONDENT, *v.* GEORGE McCONNELL, SURVIVOR OF McCONNELL & GARDNER, APPELLANT.

*Statute of frauds — amendment, setting up services rendered, instead of the breach of a parol agreement — a void parol agreement to buy bark — is not property — is not a contribution to a firm when turned over to it.*

The complaint in an action demanded judgment, first, for the value of the plaintiff's services in building a tannery at Oregon, Warren county, for a firm, of which the defendant was the survivor; and, second, for damages resulting from the failure of the firm to perform a parol agreement to take the plaintiff into the tannery business.

Upon the trial of the action it appeared that the parol contract covered a term of twelve years, and that after part performance thereof the plaintiff had been discharged; that the plaintiff had expended moneys in and about the erection of the tannery, for the benefit of the firm, and that he had allowed the firm to take the benefit of an oral contract, which he had made in his own name with

one Griffin for the purchase of a large quantity of bark, from which contract, as plaintiff alleged, the firm made a large profit.

When the plaintiff rested the defendant moved to dismiss the complaint upon the ground that the parol agreement to make him a partner was void under the statute of frauds, being neither in writing nor capable of performance within one year.

The court, while apparently holding that the contract was void, allowed the plaintiff to recover for his services and disbursements, and for the profit on the bark contract.

*Held,* that the plaintiff might recover if the complaint could, as appeared to be the fact, be amended so as to be adapted to the recovery for services and disbursements without thereby introducing a new cause of action.

That, upon the facts stated in the complaint, as the defendant had failed to plead the statute of frauds, and the plaintiff could not know that that objection would be raised until it was actually taken, the plaintiff might recover for his services and disbursements, but not upon the bark contract.

That as the oral bark contract was for an amount over fifty dollars it was void; and as the plaintiff never had a right to acquire the bark, nor the title to it, his option could not be deemed a contribution of property by him to the assets of the firm.

That a recovery upon said bark contract was improper, as the evidence did not show that the plaintiff was able or willing to carry it out, or that he would have done so if the firm had not.

That as the parol agreement between the plaintiff and the firm was void the plaintiff could not recover upon it, but must recover, if at all, upon an implied assumpsit.

That the parol agreement was evidence of a request for the services, money and property furnished.

APPEAL by the defendant George McConnell, as survivor of McConnell & Gardner, from a judgment, entered in the office of the clerk of the county of Warren on the 4th day of August, 1890, in favor of the plaintiff for $21,842.13 recovery, besides costs, after a trial by the court at the Warren County Circuit.

The complaint sought a recovery, first, for the services and expenditures of the plaintiff in building a tannery for defendant's firm at Oregon, Warren county; second, for damages sustained by the plaintiff because of the breach by the defendants of an oral agreement to take the plaintiff into the tannery business upon the completion of said tannery, in the erection of which the services and expenditures mentioned in the first count of the complaint were rendered and made.

The answer admits that plaintiff did render services for defendants in the construction of the tannery, but denies they were of the value claimed by plaintiff, and sets forth the contract in terms different.

from those alleged by the plaintiff, and alleges that plaintiff voluntarily left defendant's employment, and also sets up a counter-claim to which plaintiff replied.

The trial court found that the oral contract was made substantially as claimed by the plaintiff; that it was to continue twelve years; that after part performance defendants refused to perform and discharged plaintiff; that plaintiff rendered services and expended moneys in and about the erection of the tannery to the amount of $3,388.73, and that plaintiff made a contribution to the tannery enterprise as follows: He allowed the defendants to enter into and take the benefit of a contract with one Griffin for the purchase of 50,000 cords of bark at fifty cents per cord, which he had orally negotiated with Griffin in his own name, that said bark was really worth seventy-five cents per cord, making $12,500 more than defendants paid for it. The court established counter-claims against the plaintiff to the amount of $6,603.68.

Upon the trial the defendant took the objection that the contract between the parties was void under the statute of frauds, and the trial court, though not expressly so finding, assumed it to be so, and held that plaintiff having performed his contract with defendants for building the tannery and running the same, until they, without just cause, turned him away and refused to carry out their contract with him, he being ready and willing to continue performance, was entitled to recover the sum contributed by him towards buying the site ($100), also the value of said bark contract and interest thereon since it was made (namely, $12,500, and interest), and for his services and expenditures in money and materials ($3,288.73), from which should be deducted the amount of the counter-claims ($6,603.68). These items, reckoning interest, made a balance in plaintiff's favor of $21.842.13, for which judgment was directed, with costs. Other facts are stated in the opinion.

*Francis A. Smith*, for the appellant.

*E. T. Brackett*, for the respondent.

LANDON, J.:

The complaint seeks a recovery for service and expenditures rendered and made by plaintiff while he was permitted by defendant's firm to continue in performance of an oral contract made with them,

and also for damages because they prematurely discharged him, and would not allow him to continue performance. The plaintiff introduced his evidence and rested, and then the defendant objected that the contract was void by the statute of frauds, being neither in writing nor by its terms performable within a year. The court, apparently, held that the contract was void by the statute of frauds, and because void that the plaintiff was, under the complaint, entitled to recover the amount of his contribution, in services, money and property, to the tannery enterprise, which was the subject-matter of the oral contract.

The defendant's position is that the plaintiff must recover, if at all, upon the causes of action set forth in the complaint, that is, first, under the contract, and, second, for its subsequent breach; that the plaintiff's evidence disproves the contract counted upon, and takes away the basis of recovery. That the recovery allowed by the court is upon the basis of the invalidity of the contract set forth; that is, upon no contract; certainly not upon the contract set forth in the complaint. If it was proper to amend the complaint so as to conform it to the theory upon which the recovery was allowed, then the objection is not well taken. The question is not free from difficulty, but we are inclined to think that the amendment suggested might have been made. The evidence was as applicable to one theory of recovery as the other; and the true test, we apprehend, is whether the amendment introduces a new subject-matter of recovery, or whether, with or without additional collateral facts, it is simply a new characterization of the old. Here the plaintiff, in framing his complaint, was not mistaken as to his facts, but simply as to his rights under them; nor could he know, until the defendant interposed the objection of the statute of frauds, that it would be taken; and if it had not been taken the court would have been bound to uphold the validity of the oral contract, since it was competent (neither good morals nor public policy being violated), for the defendant to waive, by his silence, the statute of frauds.

We pass now to consider the question whether the allowance to the plaintiff of the estimated profits of the bark contract was proper.

The plaintiff was a practical tanner, owning and operating a tannery at North Creek, Warren county, and holding contracts with McConnell & Gardner of Boston, Mass., who were partners and

dealers in hides and leather, and in procuring hides to be tanned into leather, of which firm defendant McConnell is the survivor, Gardner having died since the commencement of this action. Prior to March, 1877, the plaintiff proposed to McConnell and Gardner that they should build and operate a tannery at Oregon in said county, about twelve miles from plaintiff's tannery, they to furnish the funds and he to superintend and manage the enterprise. The plaintiff pointed out to them the advantages of a particular site which he designated, among which was the abundance of bark near the proposed site, upon land which one Griffin was about to purchase at foreclosure sale. Plaintiff had opened negotiations with Griffin for the purchase of the bark upon this land to the amount of 50,000 cords at fifty cents a cord, in case Griffin should complete the purchase. Griffin did orally agree with plaintiff that he would sell him the bark at fifty cents a cord when he should acquire title to the land. It is not claimed that this was a valid contract under the statute. The plaintiff also obtained from one Van Dusen a contract allowing him to purchase within a limited time the site for the proposed tannery for $3,000, being a tract of 400 acres of land. Plaintiff paid $100 upon this contract to be allowed upon the purchase-money if the land should be purchased, and to be forfeited if not purchased. McConnell and Gardner in May, 1877, concluded to embark in the enterprise, and then entered into an oral agreement with the plaintiff, whereby they agreed to furnish the money for the purchase of said bark and site, and for the erection and proper equipment of a tannery on said site, the plaintiff to cause the title to the site to be procured in their names, and the said bark at said price to be purchased of Griffin also in their names, the plaintiff to superintend the erection and equipment of the tannery. McConnell and Gardner upon the completion of the tannery were to stock it with hides for tanning, all of said bark to be used for such purpose, the plaintiff to superintend the business and be paid $1,000 per year from the commencement and during the period necessary to consume said bark, which was estimated at twelve years, and, also, after computing the expenses and receipts upon a plan agreed upon the plaintiff was to be paid, in addition, one-third of the net profits.

In pursuance of such agreement the site was purchased, and the contract for the purchase of the said bark by McConnell and Gardner

was made by them with Griffin in writing, plaintiff assisting in the negotiations and the firm furnishing the money for both bark and site. The plaintiff proceeded with the erection of the tannery, the firm furnishing him large sums of money for the purpose. The plaintiff rendered services in this employment from May, 1877, until October, 1878, when the firm without just cause discharged him. Upon these facts and upon defendant's objection, sustained by the trial court, that the contract was void by the statute of frauds, plaintiff was entitled to recover, not under the contract, but as upon an implied assumpsit for whatever services, money or property he had furnished the firm. (*Day* v. *N. Y. C. R. R. Co.*, 51 N. Y., 583.) The contract has no value as such, but is evidence of a request for the services, money and property supplied by plaintiff.

Griffin did obtain title to the bark land, and was ready and willing to sell the bark to plaintiff at fifty cents a cord. Whether, independent of the tannery enterprise, plaintiff was ready, able and willing to purchase the bark for himself is not directly found by the trial court. His own testimony and his letters lead us to think that he made his negotiation for it as an inducement to McConnell & Gardner to engage in the tannery enterprise, and if they had not so engaged, plaintiff would not have bought the bark. He testifies that Griffin told him he would sell the bark for fifty cents "to start a tannery there." That McConnell told him to "close the contract with Griffin for the bark if you can, make arrangements to go ahead and build when you're sure you can get the bark." The large supply of bark and its cheapness were the principal advantages of the location at Oregon. Plaintiff, in a letter to McConnell & Gardner, dated April 6, 1877, writes: "There is 200,000 cords of bark in that location that must come to the two tanneries." The plaintiff did not testify that he would have bought the bark if his negotiations with McConnell & Gardner had fallen through. He does testify that, in September, 1877, in a conversation with Gardner, in which he objected to leaving the employment of the firm, he said to Gardner: "When I first talked of buying this bark I intended it for the North Creek tannery (plaintiff's). I afterwards concluded it would be better to build a tannery at Oregon." This subsequent declaration of his earlier intention may not be the best evidence of it, but, if we accept it, it shows that the intention was transient, and

was soon replaced by a different one. The finding of the trial court that Griffin would have sold the bark to the plaintiff, and not to the firm, except with the consent of the plaintiff, falls short of a finding that plaintiff would have bought the bark if the firm had not. The evidence would not justify the latter finding. When, therefore, McConnell & Gardner agreed with him upon the erection of the new tannery, and for the purchase of the bark, for which plaintiff had obtained an oral refusal of Griffin, and McConnell & Gardner, with the consent and assistance of plaintiff, purchased the bark, it seems clear that the plaintiff did not either transfer or contribute to them any tangible property of his own, or any valuable right existing in himself to acquire it. The plaintiff had not converted his opportunity to acquire property into property. He, in effect, said to McConnell & Gardner: I think, indeed, I am sure, I can buy this bark for fifty cents a cord, but if you will go into this enterprise I will let you buy it, and will assist you in doing so. Plaintiff cites *Benton* v. *Pratt* (2 Wend., 385). In that case a firm of hog buyers had orally agreed with plaintiff to buy of him 200 hogs at the market-price, provided he delivered them within two weeks. By the statute of frauds this agreement was void. The plaintiff procured the hogs and was driving them along the highway to the place of delivery. When seventy miles distant from said place, defendant, with a like drove of hogs, passed him on the road, and learning from plaintiff his arrangement for the sale of his hogs, hastened along to the same place. The hog buyers there told defendant that they could not buy of him on account of their contract with plaintiff. Defendant told them plaintiff was not coming, but was going elsewhere with his drove. The hog buyers were thereby induced to buy defendant's hogs, and being thus supplied, refused to purchase of plaintiff when he arrived with his hogs. Had they known he was coming they would not have purchased of defendant, and would have purchased of plaintiff. Plaintiff recovered of defendant the damages he sustained in consequence of the deceit practiced by defendant. *Rice* v. *Manley* (66 N. Y., 82), was also a case of deceit causing damage, and the recovery was placed upon that ground. In the present case, McConnell & Gardner practiced no fraud or deceit. They refused to perform a void agreement not amounting to a contract, which imposed no

legal obligation of performance. (*Dung* v. *Parker*, 52 N. Y., 494; *Levy* v. *Brush*, 45 id., 589.) Moreover, it does not distinctly appear here that the plaintiff would have secured any advantage from his option to buy the bark if he had not given McConnell & Gardner the benefit of it.

Plaintiff's contribution to the tannery enterprise, aside from money and materials as found by the court, were his skill, services, activity, knowledge of local conditions and opportunities to make this bark and other contracts advantageous to his employers, whom, when he entered their service as their agent and superintendent, he undertook to serve faithfully in these respects. He contributed no bark nor profits in a bark contract, for he had neither, nor is it clear that he was induced by any act of his employers to forego any advantage otherwise certain to result to himself in respect to the bark. In measuring his recovery his actual contribution to the tannery enterprise should be allowed at its actual value, but not the profits of a contract which plaintiff negotiated for the defendant's firm and not for himself.

The defendant urges that there are some errors in the items of the other allowances; if so, they can be readily corrected upon another trial.

The judgment should be reversed, new trial granted, costs to abide the event.

LEARNED, P. J., and MAYHAM, J., concurred.

Judgment reversed, new trial granted, costs to abide event.