# SUPREME JUDICIAL COURT,

#### FOR THE

## COUNTY OF WORCESTER, OCTOBER TERM 1871, AT WORCESTER.

PRESENT:

Hon. REUBEN A. CHAPMAN, Chief Justice.
Hon. HORACE GRAY, Jr., ⎫
Hon. JOHN WELLS, ⎬ Justices.
Hon. SETH AMES, ⎪
Hon. MARCUS MORTON, ⎭

---

### SAMUEL WALKER & others vs. MICHAEL CRONIN.

An action of tort may be maintained upon a count which alleges that the plaintiff was a manufacturer of shoes, and for the prosecution of his business it was necessary for him to employ many shoemakers; that the defendant, well knowing this, did unlawfully and without justifiable cause molest him in carrying on said business, with the unlawful purpose of preventing him from carrying it on, and wilfully induced many shoemakers who were in his employment, and others who were about to enter into it, to abandon it without his consent and against his will; and that thereby the plaintiff lost their services, and profits and advantages which he would have derived therefrom, and was put to great expense to procure other suitable workmen, and compelled to pay larger prices for work than he would have had to pay but for the said doings of the defendant, and otherwise injured in his business.

An action of tort may be maintained upon a count which alleges that the plaintiff entered into contracts with certain shoemakers for them severally to make stock, which he delivered to them, into shoes, and return the shoes to his factory; that the defendant, well knowing this, with the unlawful purpose of preventing him from carrying on his business, induced them to return the stock unfinished to the factory, and to neglect and re-

fuse to make it into shoes as they had agreed to do; and that the stock was thereby damaged, and the plaintiff put to trouble and expense in reassorting it and procuring it to be finished, and compelled to pay larger prices for the finishing of it than he would have done under said contracts, and by reason of the said unlawful doings of the defendant was hindered and put to expense and otherwise injured in his business.

An action of tort may be maintained upon a count which alleges that a certain shoemaker was in the plaintiff's service and employment on a specified day, and for a valuable consideration on that day agreed to make three cases of shoes for the plaintiff within one month; that the defendant, well knowing this, contriving to defraud the plaintiff of the profit and benefit of said service and of the performance of said contract, did on another day, specified as being before the expiration of the month, entice and procure the shoemaker, then being in the plaintiff's service, and before he had performed said contract, as the defendant well knew, to leave the plaintiff's service and refuse to perform the contract, without the plaintiff's leave and against the plaintiff's will, by means of which enticement the shoemaker on the last named day did leave said service and neglect and refuse to perform said contract, without the leave and against the will of the plaintiff; and that the plaintiff thereby lost profits and benefits which would otherwise have accrued to him from said service and by the performance of said contract.

TORT, brought in the superior court. The declaration was as follows:

"*First count.* And the plaintiffs say that before and at the time of the committing of the several grievances by the defendant, as hereinafter mentioned, they were, and from thence hitherto have been, engaged in the manufacture and sale of boots and shoes in the town of Milford in the county of Worcester, and have heretofore made, and ought and would have continued to make, large profits in their said business but for the said several grievances committed by the defendant; and they further say that in the prosecution of their said business it was necessary for them to employ, and they did employ, a large number of persons as makers of boots and shoes so manufactured by them, all which the defendant well knowing did on or about the 1st day of January 1869, and at divers times thereafter, and till the date of the plaintiffs' writ, with divers other persons whose names are unknown to the plaintiffs, unlawfully and without justifiable cause molest, obstruct and hinder the plaintiffs from carrying on said business, with the unlawful purpose of preventing the plaintiffs from carrying on their said business, and wilfully persuaded and induced a large number of persons, who were in the employment of the plaintiffs as bottomers of boots and shoes as aforesaid, and others who were about to enter into the employment of

the plaintiffs, and who were skilled in the art of bottoming boots and shoes, to leave and abandon the employment of the plaintiffs, without their consent and against their will; whereby the plaintiffs lost the services of said persons so as aforesaid employed and about to be employed, and all the advantages and profits that they would otherwise have made and received from the service and employment of said persons; and the plaintiffs incurred large expenses to procure other suitable workmen to take the places of those so induced to leave and abandon their employment, and were compelled to pay much larger prices for said work and labor of b·⁺⁺oming boots and shoes than they would otherwise have done ⸳ɤᵗ for the committing of said several grievances by the defendant and others, whose names are to the plaintiffs unknown, although said work and labor were of no greater value to them, and the enhanced prices they were compelled to pay as aforesaid were much greater than the usual market price for such work and labor; and the plaintiffs have been compelled, by reason of the acts aforesaid of the defendant and the other persons aforesaid whose names are to the plaintiffs unknown, to pay much more for the manufacture of boots and shoes in other branches of said manufacture, and have been hindered in their business to a large extent, and prevented from manufacturing the quantity of boots and shoes that they would otherwise have manufactured, and in the manufacture of which they would otherwise have realized large profits, all which the defendant well knew.

" *Second count.* And the plaintiffs further say that before and at the time of committing the several grievances by the defendant, as hereinafter mentioned, they had made several contracts with a large number of persons skilled in the art of making boots and shoes, whose names are as follows: [here naming forty-five persons, including among them one Lyman L. Temple,] whereby said several persons had severally for valuable consideration agreed with the plaintiffs to make certain stock, duly assorted and delivered to them for that purpose by the plaintiffs, into boots and shoes for the plaintiffs, and to return the same, so manufactured into boots, and boots and shoes, to the factory of the plaintiffs in said Milford; all which the defendant well knowing,

with the unlawful purpose of hindering and preventing the plaintiffs from carrying on their said business, did induce said persons to refuse and neglect to make and finish said stock into boots and shoes as they had agreed to do; and by the means aforesaid the defendant induced the said persons to return said stock wholly unmanufactured or in an unfinished condition, whereby said stock was greatly damaged, and the plaintiffs were put to great trouble and expense in reassorting said stock and in procuring the same to be made into boots and shoes, and were compelled to pay much larger prices for the making of the same than they would otherwise have paid to the said several persons with whom they had contracted as aforesaid, and by reason of the said unlawful acts of the defendant they wholly lost the benefit and profits of said contracts with the persons aforesaid, and by reason of the said unlawful acts and doings of the defendant great uncertainty and irregularity was caused in the prosecution of the aforesaid business of the plaintiffs, and they were greatly hindered and put to great expense in the prosecution of their said business, and in the manufacture of boots and shoes, and in the completion of the same for market, and they have been and are greatly injured in their aforesaid business and manufacture and sale of boots and shoes.

"*Third count.* And the plaintiffs say that one Lyman L. Temple, on or about the 19th day of January 1869, was in the plaintiffs' service and employment, and at the time aforesaid for a valuable consideration made a contract with the plaintiffs to make for them certain boots and shoes, to wit, three cases of boots and three cases of shoes, within a reasonable time, to wit, within one month, all of which the said defendant well knew; yet the said defendant, contriving to defraud and deprive the plaintiffs of all the profits and benefits of the said service and of the performance of said contract, did on or about the 1st day of February 1869 entice and procure the said Temple, then being in the plaintiffs' service, and before he had performed said contract, as the defendant well knew, without the plaintiffs' leave and against their will, to leave the service of the plaintiffs, and to refuse to perform his said contract, by means of which enticement the said Temple afterwards, to wit, on the same day, left the plaintiffs' service and

neglected and refused to perform his said contract, without the leave and against the will of the plaintiffs, whereby the plaintiffs lost the profits and benefits that would otherwise have accrued to them from said service and by the performance of said contract."

The defendant demurred, and specified the following causes of demurrer :

" 1. That neither of the three counts states a legal cause of action substantially in accordance with the rules contained in the Gen. Sts. *c.* 129.

" 2. That the acts alleged in the several counts to have been done by the defendant do not constitute a legal cause of action in favor of the plaintiffs.

" 3. That it is not actionable, for the purpose alleged in the first count, for the defendant to persuade and induce, as alleged, the persons alleged to leave and abandon the plaintiffs' employment.

" 4. That, as to the second count, it is not actionable for the defendant, for the purpose alleged, to induce the persons therein alleged to refuse and neglect to carry out the alleged agreement.

" 5. That, as to the third count, it is not actionable for the defendant to entice and procure said Temple to leave the alleged service of the plaintiffs, and to refuse to perform his alleged contract, in manner and form as alleged.

" 6. That there is no such relation shown between the plaintiffs and the persons alleged in the several counts to have been in their employment or about to enter their employment, as to make the alleged acts and conduct of the defendant in the premises unlawful."

The superior court sustained the demurrer, and the plaintiffs appealed.

*P. E. Aldrich & T. G. Kent,* for the plaintiffs, were first called upon.

*H. B. Staples,* ( *C. Cowley & F. P. Goulding* with him,) for the defendant. 1. As to the first count. It does not appear that the persons who were induced to leave the plaintiffs' employment had not a perfect right to do so. *Commonwealth* v. *Hunt,* 4 Met. 111, 130. *Bowen* v. *Matheson,* 14 Allen, 499. *Campbell* v.

*Cooper,* 34 N. H. 49. *Hart* v. *Aldridge,* Cowp. 54. Nor does it appear that they were induced to leave by illegal means; and without such an allegation the count contains no cause of action. Cowp. 54. 4 Met. 126, 132.

Nor can an action be maintained upon the allegation that the defendant "persuaded and induced" persons who were about to enter the plaintiffs' employment to refrain from so doing, no illegal methods being stated. 4 Met. 111. See also the allegations held to be defective in 14 Allen, 499. And this allegation cannot be rejected as surplusage, for it may go to the whole damage, and is so closely connected with the charge of inducing persons actually in the employment to leave it, as to make one charge in substance. The allegation that the defendant did molest, obstruct and hinder the plaintiffs is limited and qualified by the specification that he "persuaded and induced." If regarded as an independent allegation, it also is insufficient in law for want of any allegation of the use of unlawful means. 4 Met. 134, 135. *Winsmore* v. *Greenbank,* Willes, 577. *O'Neill* v. *Longman,* 4 B. & S. 376.

2. As to the second count. It contains more than one cause of action. Gen. Sts. c. 129, § 2, cl. 4. It does not appear that the persons specified in it were induced to refuse to perform their contracts by the use of any illegal means by the defendant. And the relation of master and servant, without which it cannot be sustained, did not exist between them and the plaintiffs. Cowp. 54. *Hilliard* v. *Richardson,* 3 Gray, 349. *Brackett* v. *Lubke,* 4 Allen, 138. *Forsyth* v. *Hooper,* 11 Allen, 419. *Coomes* v. *Houghton,* 102 Mass. 211.

3. As to the third count. The contract alleged between the plaintiffs and Temple did not create the relation of master and servant. See cases last above cited.

The allegations that he was in their employment and service, and was enticed to leave their service, are mere legal inferences as to the relation created by his contract, and do not constitute a substantive charge against the defendant; or they may be regarded as a general description of the cause of action more particularly set forth in the allegations concerning the contract, and

therefore as limited and explained by such allegations, or as a mere recital of the relation between the parties when the contract was entered into which terminated such relation. But ( ven if the allegations of service and employment, and enticement there-from, be considered substantive, independently of all reference to the contract, then the first proposition maintained by the defendant as to the first count, and the cases cited in its support, apply to this count also.

The defendant is alleged to have enticed Temple to refuse to perform his contract before the time agreed on for its performance had arrived; and Temple's refusal to perform it is alleged to have taken place at the same time. The count only states that on or about the 1st of February, by the enticement of the defendant, Temple refused to perform a contract under which his right of performance extended to the 19th of February, whereby it alleges that the plaintiffs lost the benefits that would have accrued from its performance on the 1st of February. If the statement be correct, no legal cause of action existed at the time of the enticement. *Bird* v. *Randall*, 1·W. Bl. 373.

The allegation " contriving to defraud," &c., is mere recital, and not traversable. 4 Met. 128. *Commonwealth* v. *Walden*, 3 Cush. 558.

4. Under both the second and third counts, the question arises whether it is actionable for one person ·to entice another to refuse to perform a contract made with a third, where no relation of master and servant exists. If the defendant is liable in this case, then every man is liable to an action who entices his neighbor not to pay a note which he owes, not to convey real estate under a contract for its conveyance, not to carry out a contract to lend money, or not to comply with a bail bond, or a thousand other contracts into which men enter daily. There is no precedent for such an action as this; except where the domestic relations, or the relations of master and servant, are involved. In all cases, the service or contract interfered with must be either one where wages are paid and the term of service fixed, or else one where the employer retains the control and constant direction

of the work. See dissenting opinion of Coleridge, J., in *Lumley* v. *Gye*, 2 El. & Bl. 216, 244. So extensive a right of action as these plaintiffs contemplate would be inconsistent with the rights of a citizen under a free government.

WELLS, J. The declaration, in its first count, alleges that the defendant did, " unlawfully and without justifiable cause, molest, obstruct and hinder the plaintiffs from carrying on " their business of manufacture and sale of boots and shoes, " with the unlawful purpose of preventing the plaintiffs from carrying on their said business, and wilfully persuaded and induced a large number of persons who were in the employment of the plaintiffs," and others " who were about to enter into " their employment, " to leave and abandon the employment of the plaintiffs, without their consent and against their will ; " whereby the plaintiffs lost the services of said persons, and the profits and advantages they would otherwise have made and received therefrom, and were put to large expenses to procure other suitable workmen, and suffered losses in their said business.

This sets forth sufficiently (1) intentional and wilful acts (2) calculated to cause damage to the plaintiffs in their lawful business, (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendant, (which constitutes malice,) and (4) actual damage and loss resulting.

The general principle is announced in Com. Dig. Action on the Case, A. : " In all cases where a man has a temporal loss or damage by the wrong of another, he may have an action upon the case to be repaired in damages." The intentional causing of such loss to another, without justifiable cause, and with the malicious purpose to inflict it, is of itself a wrong. This proposition seems to be fully sustained by the references in the case of *Carew* v. *Rutherford*, 106 Mass. 1, 10, 11.

In the case of *Keeble* v. *Hickeringill*, as contained in a note to *Carrington* v. *Taylor*, 11 East, 571, 574, both actions being for damages by reason of frightening wild fowl from the plaintiff's decoy, Chief Justice Holt alludes to actions maintained for scandalous words which are actionable only by reason of being inju-

rious to a man in his profession or trade, and adds : " How much more, when the defendant doth an actual and real damage to another when he is in the very act of receiving profit in his employment. Now there are two sorts of acts for doing damage to a man's employment, for which an action lies ; the one is in respect of a man's privilege, the other is in respect of his property." After considering injuries to a man's franchise or privilege, he proceeds : " The other is where a violent or malicious act is done to a man's occupation, profession, or way of getting a livelihood ; there an action lies in all cases." From the several reports of this case it is not clear whether the action was maintained on the ground that the wild ducks were frightened out of the plaintiff's decoy, as would appear from 3 Salk. 9, and Holt, 14, 17, 18 ; or upon the broader one, that they were driven away and prevented from resorting there, as the case is stated in 11 Mod. 74, 130. But the doctrine thus enunciated by Lord Holt covers both aspects of the case ; as does his illustration of frightening boys from going to school, whereby loss was occasioned to the master. Of like import is the case of *Tarleton* v. *McGawley*, Peake, 205, in which Lord Kenyon held that an action would lie for frightening the natives upon the coast of Africa, and thus preventing them from coming to the plaintiff's vessel to trade, whereby he lost the profits of such trade.

There are indeed many authorities which appear to hold that to constitute an actionable wrong there must be a violation of some definite legal right of the plaintiff. But those are cases, for the most part at least, where the defendants were themselves acting in the lawful exercise of some distinct right, which furnished the defence of a justifiable cause for their acts, except so far as they were in violation of a superior right in another.

Thus every one has an equal right to employ workmen in his business or service ; and if, by the exercise of this right in such manner as he may see fit, persons are induced to leave their employment elsewhere, no wrong is done to him whose employment they leave, unless a contract exists by which such other person has a legal right to the further continuance of their services. If such a contract exists, one who knowingly and intentionally pro-

cures it to be violated may be held liable for the wrong, although he did it for the purpose of promoting his own business.

One may dig upon his own land for water, or any other purpose, although he thereby cuts off the supply of water from his neighbor's well. *Greenleaf* v. *Francis*, 18 Pick. 117. It is intimated, in this case, that such acts might be actionable if done maliciously. But the rights of the owner of land being absolute therein, and the adjoining proprietor having no legal right to such a supply of water from lands of another, the superior right must prevail. Accordingly it is generally held that no action will lie against one for acts done upon his own land in the exercise of his rights of ownership, whatever the motive, if they merely deprive another of advantages, or cause a loss to him, without violating any legal right; that is, the motive in such cases is immaterial. *Frazier* v. *Brown*, 12 Ohio State, 294. *Chatfield* v. *Wilson*, 28 Verm. 49. *Mahan* v. *Brown*, 13 Wend. 261. *Delhi* v. *Youmans*, 50 Barb. 316. A similar decision was made in *Wheatley* v. *Baugh*, 25 Penn. State, 528; but the suggestion in *Greenleaf* v. *Francis* was approved so far as this, namely, that malicious acts without the justification of any right, that is, acts of a stranger, resulting in like loss or damage, might be actionable; and the case of *Parker* v. *Boston & Maine Railroad*, 3 Cush. 107, was referred to as showing that such loss of advantages previously enjoyed, although not of vested legal right, might be a ground of damages recoverable against one who caused the loss without superior right or justifiable cause.

Every one has a right to enjoy the fruits and advantages of his own enterprise, industry, skill and credit. He has no right to be protected against competition; but he has a right to be free from malicious and wanton interference, disturbance or annoyance. If disturbance or loss come as a result of competition, or the exercise of like rights by others, it is *damnum absque injuriâ*, unless some superior right by contract or otherwise is interfered with. But if it come from the merely wanton or malicious acts of others, without the justification of competition or the service of any interest or lawful purpose, it then stands upon a different footing, and falls within the principle of the authorities first referred to.

It is a well settled principle, that words, not actionable in themselves as defamatory, will nevertheless subject the party to an action for any special damages that may occur to another thereby. Bac. Ab. Slander, C. The same is true of words spoken in relation to property, or the title thereto, whereby the party is defeated of a sale, or suffers damage in any way. Bac. Ab. Action on the Case, I. Com. Dig. Action on the Case, C. So also, if, by a wrongful claim of title or lien, the owner is prevented from perfecting a sale, or a purchaser from obtaining delivery to himself of goods, an action will lie. *Green* v. *Button*, 2 Cr., M. & R. 707.

In all these cases, the damage for which the recovery is had is not the loss of the value of actual contracts by reason of their non-fulfilment, but the loss of advantages, either of property or of personal benefit, which, but for such interference, the plaintiff would have been able to attain or enjoy. Indeed, it has been held that loss by the breach of contract, or the wrongful conduct of another than the defendant, would not be recoverable as damages under a *per quod*. *Vicars* v. *Wilcocks*, 8 East, 1. *Morris* v. *Langdale*, 2 B. & P. 284. Bac. Ab. Slander, C.

This doctrine has been doubted, especially in *Lumley* v. *Gye*, 2 El. & Bl. 216, 239, where the case of *Newman* v. *Zachary*, Aleyn, 3, is cited to the contrary. That was an action on the case, maintained for wrongfully representing to the bailiff of a manor that a sheep was an estray, in consequence of which it was wrongfully seized; the reason for the decision being, " because the defendant, by his false practice, hath created a trouble, disgrace and damage to the plaintiff." But the distinction is unimportant in a case like the present, where the damage to the plaintiffs is alleged to have been the direct result of the wrongful conduct of the defendant, and so intended by him ; except that it is significant of the point that the existence and defeat of rights by contract are not essential to the maintenance of an action for malicious wrong, when the defendant has no pretext of justifiable cause.

The case of *Green* v. *Button*, 2 Cr., M. & R. 707, is especially in point in this connection. The defendant, by means of a false

claim of a lien, and of words discrediting the plaintiff, induced one who had sold goods to the plaintiff to refuse to deliver them, whereby he was injured in his business. The court, alluding to the doubts that had been expressed as to *Vicars* v. *Wilcocks* and *Morris* v. *Langdale*, and without deciding that question, distinguished the case under consideration, on the ground that, the goods not having been paid for, there was no absolute contract to deliver, upon which the plaintiff could have his remedy against the seller; that is, as the delivery was prevented by the wrongful conduct of the defendant, and there was no binding contract broken by the seller, therefore the plaintiff was entitled to recover in his action on the case *per quod*.

In *Gunter* v. *Astor*, 4 J. B. Moore, 12, an action was maintained for enticing away workmen from their employment for a piano manufacturer. They were not hired for a limited time, but worked by the piece. The discussion indicates that damages were considered to be recoverable for the breaking up or disturbance of the business of the plaintiff, whereby he suffered the loss of his usual profits for a long period. The grounds of damage were apparently regarded as altogether independent of the mere loss of any contracts with the workmen.

In *Benton* v. *Pratt*, 2 Wend. 385, it is held that proof of loss by the plaintiff of what he would otherwise have obtained, though there was no contract for it which he could enforce, will sustain an action for the wrongful conduct by which the loss was occasioned.

The difficulty in such cases is to make certain, by proof, that there has been in fact such loss as entitles the party to reparation; but that difficulty is not encountered in the present stage of this case, where all the facts alleged are admitted by the demurrer. The demurrer also admits the absence of any justifiable cause whatever. This decision is made upon the case thus presented, and does not apply to a case of interference by way of friendly advice, honestly given; nor is it in denial of the right of free expression of opinion. We have no occasion now to consider what would constitute justifiable cause.

The second and third counts recite contracts of the plaintiffs with their workmen for the performance of certain work in the manufacture of boots and shoes ; and allege that the defendant, well knowing thereof, with the unlawful purpose of hindering and preventing the plaintiffs from carrying on their business, induced said persons to refuse and neglect to perform their contracts, whereby the plaintiffs suffered great damage in their business.

It is a familiar and well established doctrine of the law upon the relation of master and servant, that one who entices away a servant, or induces him to leave his master, may be held liable in damages therefor, provided there exists a valid contract for continued service, known to the defendant. It has sometimes been supposed that this doctrine sprang from the English statute of laborers, and was confined to menial service. But we are satisfied that it is founded upon the legal right derived from the contract, and not merely upon the relation of master and servant ; and that it applies to all contracts of employment, if not to contracts of every description.

In *Hart* v. *Aldridge,* Cowp. 54, it was applied to a case very much like the present.

In *Gunter* v. *Astor,* 4 J. B. Moore, 12, it was applied to the enticing away of workmen not hired for a limited or constant period, but who worked by the piece for a piano manufacturer.

In *Sheperd* v. *Wakeman,* Sid. 79, it was applied to the loss of a contract of marriage by reason of a false and malicious letter claiming a previous engagement.

In *Winsmore* v. *Greenbank,* Willes, 577, the defendant was held liable in damages for unlawfully and unjustly " procuring, enticing and persuading " the plaintiff's wife to remain away from him, whereby he lost the comfort and society of his wife, and the profit and advantage of her fortune.

In *Lumley* v. *Gye,* 2 El. & Bl. 216, the plaintiff had engaged Miss Wagner to sing in his opera, and the defendant knowingly induced her to break her contract and refuse to sing. It was objected that the action would not lie, because her contract was merely executory, and she had never actually entered into the service of the plaintiff ; and Coleridge, J., dissented, insisting

that the only foundation for such an action was the statute of laborers, which did not apply to service of that character; but after full discussion and deliberation it was held that the action would lie for the damages thus caused by the defendant.

In *Boston Glass Manufactory* v. *Binney*, 4 Pick. 425, which was for inducing workmen, skilled in several departments of glass-making, to leave the employment of the plaintiff, it was not suggested that the defendants would not have been liable if there had been an existing contract between the plaintiff and the workmen.

Upon careful consideration of the authorities, as well as of the principles involved, we are of opinion that a legal cause of action is sufficiently stated in each of the three counts of the declaration.                                          *Demurrer overruled.*