JOHN LALLY, Appellant, v. THOMAS CANTWELL, Respondent.

St. Louis Court of Appeals, April 24, 1888.

ACTION—FALSE STATEMENTS CAUSING INJURY.—A petition in which it
is alleged that the defendant has made false statements concerning
the plaintiff, in consequence whereof the plaintiff was discharged
from his profitable employment and prevented from obtaining
other employment in the line of his calling, and that the defendant
was actuated by malice in so doing, and in which facts are alleged
in the same connection from which the law implies malice, states
a good cause of action.

APPEAL from the St. Louis Circuit Court, HON.
JAMES A. SEDDON, Judge.

*Reversed and remanded.*

F. A. C. McMANUS, for the appellant: The privi-
lege granted to a citizen of this state to prosecute what-
ever lawful occupation he may desire, free from unlawful
or wrongful molestation or interference, is a constitu-
tional right, and he must seek his redress in the proper
court. Const. Mo., art. 2, secs. 4, 10. The undue
interference of defendant in the affairs of plaintiff was
a wrong and an unlawful act. Bill of Rights, art. 2 ;
Const. of Mo., sec. 5 ; *Carew v. Rutherford*, 106 Mass.
1 ; *Walker v. Cronin*, 107 Mass. 555. The petition
clearly shows an invasion of the individual civil rights
of the plaintiff by defendant, which differs materially
from the mere intermeddling of a business rival.
*McCann v. Wolf*, 28 Mo. App. 447. Fraudulent inter-
ference will support an action for the loss of a business
favor or of customers. 7 Cush. 322 ; 66 N. Y. 82 ; Sid.
79 ; 4 Cowen, 302 ; 15 Johns. 185 ; Cro. Jac. 323 ; 1
Taunt. 39 ; 3 Bulstr. 48. The petition alleges the "circu-
lar" was maliciously and publicly disseminated. Malice
means an unlawful act done intentionally, without just
cause or excuse. Rev. Stat., sec. 3512 ; 62 Mo. 350.

ROWE & MORRIS, for the respondent: The substantive averment against the respondent is, that he maliciously, wickedly, unlawfully, and fraudulently published and distributed the false, malicious, injurious, and defamatory circular. The words of the circular are not actionable *per se*. The circular could not be made to impute either an indictable offence or nefarious conduct. Such being the case special damages must be alleged and proved. *Rammell v. Otes*, 60 Mo. 365; *Bundy v. Hart*, 46 Mo. 460; *Curry v. Collins*, 37 Mo. 324; *Berch v. Benton*, 26 Mo. 153; *Speaker v. McKenzie*, 26 Mo. 255; *Herman v. Bradstreet*, 19 Mo. App. 227; Odgerson Libel and Slander, 293; 3 Sutherland on Damages, 666; *Legg v. Dunlevy*, 10 Mo. App. 461; 8 Mo. 558; *Salvatelli v. Ghio*, 9 Mo. App. 155. The facts averred in the appellant's petition do not make a boycott. *Commonwealth v. Shelton*, 11 Va. Law Jour. 329; *State v. Glidden*, 8 Atl. Rep. 890.

THOMPSON, J., delivered the opinion of the court.

This appeal is prosecuted from the judgment of the circuit court sustaining a demurrer to the following petition : "Plaintiff states that defendant is a plumber by occupation, and doing business at No. 1004, Olive street, in the city of St. Louis, and state of Missouri ; and that said defendant is a member of the 'Association of Master Plumbers,' of the said city and state, one of the objects of which is, according to their printed constitution and by-laws, 'to promote amicable relations with employes on the basis of mutual interest and equitable justice to both journeymen and master plumbers, and to regulate the system of apprenticeship and employment, so as to prevent, as far as practicable, the evils growing out of deficient training in the responsible duties of selecting, arranging, and fitting up of materials relating to the hydraulic and sanitary conditions of dwellings, public and private institutions;' that the members, of whom the defendant is one,

adopted a set of by-laws and promulgated the same for
the use of their association and the guidance of their mem-
bers, amongst which is article eleven, the one spoken
of in the circular, which reads as follows : 'No member
shall employ any helper or apprentice who has pre-
viously worked for another plumber without the written
recommendation of the latter.' That plaintiff, on or
about January, 1884, commenced working for defend-
ant, and steadily labored for him, with the exception of
about six or seven weeks of said time, until on or about
August, 1887, and received for his said employment
various sums per week during all the time of his said
engagement ; that, on or about August, 1887, plaintiff
and defendant had a misunderstanding, and in conse-
quence thereof he (plaintiff) quit the employment of
defendant and sought work elsewhere ; that he obtained
work with one Thomas Killoren, a plumber in this city;
that thereupon, on or about September, 1887, the
defendant herein, by fraudulent acts, had the following
false, malicious, injurious, and defamatory circular, i. e.:

"'St. Louis, September 27, 1887.

"'Dear Sir : John Lally, an apprentice in my
shop, not out of his time, quit work without cause on
August 1.    If he is working for you now, or applies for
work, you will understand the situation.    Article eleven
of the by-laws covers the case.

"'Respectfully,

"'Thomas Cantwell, Plumber, 1004 Olive St.'

"Unlawfully drafted and publicly and unlawfully
distributed throughout the city of St. Louis ; and, with
a design to injure this plaintiff, he especially caused the
said circulars to be delivered to the gentleman in whose ·
employ the plaintiff was at the time engaged, thus by
his fraudulent acts leading him and the members of said
association to believe that plaintiff was an apprentice of
said Cantwell and not out of his time.    And defendant,
together with and by his agents, employes, and others,
and also through the aid of the United States mail, with
the intention of injuring this plaintiff in his good name

and character as a workman at the plumbing trade, maliciously caused said false, injurious, and defamatory circular to be unlawfully and publicly distributed to all the plumbers of the city; thus fraudulently leading them to believe that the plaintiff was an apprentice of said Cantwell's not out of his time, when in truth and fact plaintiff never was an apprentice of said Cantwell's, nor did he leave the said Cantwell's employment without cause; that in consequence of the malicious, unlawful, and public distribution of said circulars, plaintiff was discharged from the employment of said Thomas Killoren, a plumber of said city; and although he has assiduously applied for work to a great number of persons engaged in the plumbing business in said city, he has, through the undue and fraudulent interference of defendant, been denied the privilege of engaging in his usual occupation, and this altogether through the malicious, wilful, and unlawful publication and uttering of the aforesaid false, injurious, and defamatory circulars by the defendant. And he further says that, by reason of the undue interference and fraudulent connivance of defendant, with the other members of said association, and by reason of the malicious, unlawful, wilful, and public distribution of the aforesaid false, malicious, injurious, and defamatory circulars, he was discharged from a pleasant and congenial employment; that his constitutional rights has (*sic*) been ruthlessly invaded by the undue and fraudulent interference of defendant in the amicable relations that existed between plaintiff's employer and plaintiff; that he has been prevented from supporting himself at his trade, or by his free labor prohibited and prevented from supporting those dependent upon his exertions for the necessaries of life; and all this through the undue and fraudulent interference as aforesaid of defendant, to plaintiff's damage in the sum of twenty-five hundred dollars, for which sum he asks judgment, and for such other relief as to this court may seem meet and proper in the premises."

We are of opinion that this petition, although very

unskillfully drawn and abounding in unnecessary epithets, repetitions, and arguments,—states a cause of action. For the examination which we have been able to make of this question, we are indebted to two very learned and discriminating articles in the American Law Review, by Mr. Wigmore of Boston. 21 Am. Law Rev. 509, 764. This writer has shown by many precedents that interference with business relations through acts 'of violence, nuisance, threats, fraud, libel, or slander, have constantly been redressed in the English courts of law since the time of Bracton. 21 Am. Law Rev. 514, 516. The leading and most thoroughly considered modern case appears to be *Keeble v. Hickeringill*, Holt, 14 ; 3 Salk. 9 ; 11 Mod. 74, 130 ; 11 East, 573, note. In that case the defendant, by the repeated firing of guns, had frightened away wild fowl about to enter the plaintiff's decoy pond. Lord Holt conceded that if the defendant had merely set up a second decoy, no action would lie. But he held that it is otherwise, "where a violent or *malicious* act is done to a man's occupation, profession, or way of getting a livelihood." The decision thus pronounced by that great judge appears to have been recognized, and applied or misapplied according to various facts or conceptions, in subsequent decisions in that country from that day to this. *Carrington v. Taylor*, 11 East, 571 ; *Young v. Hichens*, 6 Q. B. 605 ; *Ibbotson v. Peat*, 34 L. J. Exch. 118 ; *Rogers v. Dutt*, 13 Moore, P. C. 209.

Since the decision in *Lumley v. Gye*, 2 El. & Bl. 216, it seems to have been regarded as established law in England and in this country that an action will lie against a person who maliciously persuades another person to break a contract with, or to do some other injury to, the plaintiff, which is actionable. *Bowen v. Hall*, 6 Q. B. Div. 333 ; *Gunter v. Astor*, 4 Moore, 12 ; *Walker v. Cronin*, 107 Mass. 555. It is upon this principle that an action lies for enticing away the plaintiff's servant (*Campbell v. Cooper*, 34 N. H. 49 ; *Bixby v. Dunlap*, 56 N. H. 456 ; *Glass Man. Co. v. Binney*,

4 Pick. 425 ; *Jones & Jeter v. Blocker*, 43 Ga. 331 ; *Salter v. Howard*, 43 Ga. 604 ; *Wharton v. Jossey*, 46 Ga. 579 ; *Gunter v. Astor*, 4 Moore, 12) ; or harboring him after he has deserted the plaintiff's employment ( *Dubois v. Allen*, Anthon, 128 ; *Dowd v. Davis*, 4 Dev. 61 ; *Peters. v. Lord*, 18 Conn. 337), provided a contract existed between the plaintiff and the servant which was broken by the act of the servant in quitting the plaintiff's employment. This principle has been extended to the domestic relations, so as to make the enticing away of the plaintiff's minor child, being his servant, *per quod servitium amisit*, actionable ( *Stuart v. Simpson*, 1 Wend. 376 ; *Caughey v. Smith*, 47 N. Y. 244 ; *Butterfield v. Ashley*, 6 Cush. 249) ; and some courts have supposed that in the case of hired servants such interferences are actionable, although no contract relation is broken. *Walker v. Cronin*, 107 Mass. 555. Whatever view may be taken of this question, all courts seem to agree, following the doctrine of *Lumley v. Guye, supra*, that an action lies for fraudulently persuading another to break his contract with the plaintiff. *Hewitt v. Ontario, etc., Co.*, 44 Up. Can. ( Q. B.) 287 ; *Heywood v. Tillson*, 75 Me. 225.

But this principle does not govern the present case, because here it is not alleged that any contract subsisted between the plaintiff and Killoren, whom the defendant induced to discharge the plaintiff from his employ. The allegations are quite consistent with the conclusion that the plaintiff was a mere servant or workman at will under Killoren, and was not engaged with him for any definite length of time. If so, Killoren had a right to discharge him at will, and committed no actionable wrong in so doing. If Killoren had been induced so to discharge him by the defendant, by persuasion merely and not by false representations, there is judicial authority for holding that no action would lie by the plaintiff against the defendant for resorting to such persuasion, although this question is undoubtedly

unsettled in the law. See, for instance, *Payne v. Railroad*, 13 Lea (Tenn.) 507 ; s. c., 20 Cent. Law Jour. 7 ; *Heywood v. Tillson*, 75 Me. 227 ; and compare with them *Carew v. Rutherford*, 106 Mass. 1 ; *Walker v. Cronin*, 107 Mass. 555 ; *State v. Glidden*, 3 New Eng. Rep. 849 ; s. c., 55 Conn. 47.

But this case falls within another well-settled principle, which is that, where the interference takes the form of false defamatory statements,—of libel or slander,—an action will lie for interference with a relation beneficial to the plaintiff, although the relation did not rest in contract, and although the breach of it by the party who was thus procured to break it was not actionable. Thus an action will lie for a libelous statement whereby the plaintiff was defeated of a prospective marriage. *Sheperd v. Wakeman*, Siderfin, 79 ; *Matthew v. Crass*, Cro. Jac. 323 ; *Southhold v. Daunston*, Cro. Car. 269 ; *Selly v. Facy*, 3 Bulstr. 48. So if, in consequence of words spoken, the plaintiff is deprived of the substantial benefit arising from the hospitality of friends, this is a sufficient temporal damage whereon to maintain an action. *Moore v. Meagher*, 1 Taunt, 39. So, slanderous words tending to the disherison of the plaintiff are actionable, although at the time of the speaking of them he had no present title. *Vaughan v. Ellis*, Cro. Jac. 213. So an action lies for a slander whereby the plaintiff, a clergyman, has lost the offerings of his parish ( *Hartley v. Herring*, 8 T. R. 130 ) ; or whereby the plaintiff, a tradesman, has been injured in his trade. *Riding v. Smith*, 1 Ex. Div. 91. It is equally clear that an action will lie against one who, by fraudulent devices, interferes with the plaintiff's business or diverts his customers from him. *Marsh v. Billings*, 7 Cush. 322; *Rice v. Manley*, 66 N. Y. 82. It is upon this principle that the mass of decisions rest which sustain actions at law or suits in equity for an injunction or an account, where there has been a fraudulent piracy by the defendant of the plaintiff's trademark or trade-name.

Applying these principles to the petition before us, we do not see any ground for holding that it states a cause of action under the head of *fraudulent* interference by the defendant with the plaintiff's employment under Killoren. Although it repeatedly charges fraud, this must be regarded as the mere use of epithets ; since it does not state any facts, which imply that the circular charged to have been issued and circulated by the defendant was circulated with a fraudulent purpose, that is, *lucri causa.* But it charges *malice* and *injury*, and it states facts from which the law implies malice ; and the general rule of law is, that where malice and injury concur, the plaintiff has a cause of action. It also charges that the circular issued and published by the defendant was false in two particulars, in that it stated that the plaintiff was an apprentice of the defendant not out of his time, and that the plaintiff had quit his employment without cause. If these facts were true ( and for the purposes of the demurrer they are admitted to be true ), they undoubtedly show a cause of action within the meaning of many of the decisions above quoted and many others that might be quoted. They show a case where a workman has been, by the publishing of false statements concerning him, discharged from an existing employment and prevented from obtaining other employment at his trade, whereby to make a living for himself and a support for those dependent upon him. It is unnecessary to extend argument further for the purpose of showing that it states an actionable injury. We may well complete our observations upon this case in the language of Lord Holt, in his celebrated judgment in *Keeble v. Hickeringill*, as given in its final revised form in a note in 11 East, 574 : "He that hinders another in his trade or livelihood is liable to an action for so hindering him. Why otherwise are scandalous words spoken of a man in his profession, actionable, when without his profession they are not so ? Though they do not effect any damage, yet are they mischievous in themelevss, and, therefore, in their own

nature productive of damage ; and, therefore, an action lies against him.  Such are all words that are spoken of a man to disparage him in his trade, that may bring damage to him, though they do not charge him with any crime that may make him obnoxious to punishment. * * * How much more, when the defendant doth an actual and real damage to another when he is in the very act of receiving profit by his employment."

All the judges concurring, the judgment is reversed and the cause remanded ; Judge Rombauer concurring in the result.