PASSAIC PRINT WORKS v. ELY & WALKER DRY-GOODS CO. et al.

(Circuit Court of Appeals, Eighth Circuit. November 14, 1900.)

No 1,410.

1. TORTS—INJURY TO ANOTHER'S BUSINESS—EFFECT OF WRONGFUL INTENT.

The right to offer property for sale, and to fix the price at which it may be bought, is an incident to its ownership, and any loss which a third party may sustain in consequence of the exercise of that right is damnum absque injuria. The right to make such an offer being undoubted, and the offer in itself lawful, it cannot be converted into an actionable wrong by an allegation that it was made with the intent and for the purpose of injuring another owner of similar property by depreciating its market value.

2. SAME.

Plaintiff alleged in its petition that it was a manufacturer of calicoes of certain designated brands and styles, which it sold in large quantities, at stated prices, to jobbers in St. Louis; that defendants, who were jobbers in that city, having on hand a limited quantity of calicoes of such brands and styles, issued circulars to retail dealers, in which they offered to sell

the same, so long as their stock should last, at prices below those asked and received from jobbers by plaintiff; that such action was taken by defendants, as plaintiff was informed and believed, for the purpose of injuring the business of the plaintiff, and not for any legitimate trade purpose of their own; and that the effect of such action was to injure and destroy plaintiff's trade in St. Louis and the country tributary thereto, and to cause other jobbers to cancel their orders to plaintiff, or to compel plaintiff to reduce its prices, thereby causing it loss and damage in a sum stated. *Held*, that such petition did not state a cause of action for the recovery of damages.

3. SAME—ACTIONS—PLEADING.

A petition alleging that defendants, by offering to sell to the retail trade certain goods owned by them, and manufactured by plaintiff, at prices lower than those at which plaintiff sold the same style and brand of goods to jobbers, with the intent and purpose of injuring plaintiff's business, caused jobbers to cancel contracts with plaintiff for the purchase of such goods, is insufficient to state a cause of action for the recovery of damages for maliciously causing plaintiff's customers to break their contracts, where it does not name any of the persons with whom such contracts existed, nor allege that such persons were not privileged to cancel their orders, nor the special damages resulting from the breach of any particular contract.

Sanborn, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

This case was determined below on a demurrer to the plaintiff's petition, which was sustained, and a final judgment was entered against the Passaic Print Works, the plaintiff below, it having declined to plead further. The plaintiff's petition contained the following allegations: That the plaintiff was a corporation organized under the laws of the state of New Jersey, and engaged in the manufacture of prints or calicoes at Passaic, in that state. That prior to February 25, 1899, it had been engaged for more than 15 years in the manufacture of prints or calicoes, and by careful management of its business had earned a reputation of manufacturing a high class of such goods. That it sold its goods, through its selling agents, to jobbers or wholesale dealers throughout the United States, who in turn sold the same to the retail trade. That the city of St. Louis, Mo., was one of the markets in which its prints or calicoes were sold at wholesale, and that it had a large and prosperous trade in that city; that among the goods by it manufactured and sold were four brands of calicoes known as "Trouville Mourning Prints," "Central Park Shirtings," "Elmora Fancy Prints," and "Ramona Fancy Prints," all of which were of a kind largely purchased by jobbers in the St. Louis market, being well suited to the retail trade tributary thereto. That its selling agents had fixed the price for said brands of calicoes for the season of 1899 as follows: For the Trouville mourning prints, 3½ cents a yard, less a discount of 5 per cent. and 2 per cent.; for the Central Park shirtings, 3½ cents a yard, less a discount of 5 per cent. and 2 per cent.; for the Elmora fancy prints, 4½ cents per yard, less a discount of 10 per cent. and 2 per cent.; and for the Ramona fancy prints, 4 cents per yard, less a discount of 5 per cent. That at the date aforesaid the blank cloth from which such calicoes were made was selling at 2½ cents per yard, and that the price above specified for the finished product was its price at Passaic, N. J., without the addition of any freight. It was further alleged that prior to February 25, 1899, the plaintiff had received orders for a large amount of the several kinds of prints aforesaid at the prices above specified from several large wholesale dealers doing business in the city of St. Louis, and "that on or about the 25th day of February, 1899, the said defendants (to wit, the Ely & Walker Dry-Goods Company et al.), combining and conspiring among themselves and with others to the plaintiff unknown, and maliciously intending to injure the business of the said plaintiff, and to cause it great loss in money, and to break up and ruin the plaintiff's trade among the jobbers in St. Louis, maliciously caused a circular in the name of the said

defendant corporation to be issued and sent out to the retail trade tributary to St. Louis, which said circular was in words and figures following; that is to say: 'Ely & Walker Dry-Goods Co. We beg to call your attention to the following items at prices that cannot be replaced, and request you to order promptly if interested, to secure first selection of styles. Prices for all items subject to change without notice, and orders accepted only for stock on hand.'" Then followed a long list of various brands of cloth, with a specification of the prices at which the various brands would be sold, and among them the following: "Trouville mourning prints, as long as they last, 3¼; Central Park and Boat Club shirting prints, as long as they last, 2⅞; Elmora and Ramona fancy prints, as long as they last, 3½." It was next averred that the plaintiff had not sold to the defendant corporation or to either of the individual defendants any of the aforesaid prints or calicoes of its manufacture for a period of about one year prior to February 25, 1899; that it had never sold to said defendants any Elmoras or Ramonas; that, if said defendant had any of said last-mentioned prints, it had purchased them at second-hand; that as it was informed and believed the defendants had but a small quantity of such goods to sell, and for that reason qualified its offer to sell by inserting in its circular the words "as long as they last"; and that the price named in said circular for the aforesaid four brands of prints of its manufacture was less than the price charged by the plaintiff for said prints, it having universally charged for said prints for delivery in the spring of 1899 the several prices therefor heretofore specified. It was next averred that the effect of the aforesaid circular was to advertise to the retail trade tributary to the city of St. Louis that the four brands of calicoes aforesaid of the plaintiff's manufacture could be purchased at a less price from the defendant corporation than they could be from other jobbers in the city of St. Louis to whom the plaintiff had sold large quantities thereof, and to cause said other jobbers to either cancel their orders, or to compel the plaintiff to make a rebate on the price of its goods in order that other jobbers might meet the prices so specified in the defendant's circular, and to break up, injure, and destroy the sale and trade in such prints in the St. Louis market and in the country tributary thereto, except at greatly reduced prices. It was also alleged, but on information and belief, that the quotations aforesaid in the defendant's circular were made for the purpose of injuring and destroying the plaintiff's trade in the manner last stated, and that in consequence of the issuance of said circular the plaintiff had lost profits on sales which it otherwise might have made to the amount of $10,000, and had been further damaged by having to change the name of its goods and by having their identity lost to the amount of $20,000, and had also been further damaged by the malicious acts complained of to the amount of $20,000; making its total loss $50,000, for which sum it prayed judgment.

Edwin C. Hoyt (George W. Lubke, Hugo Muench, Frederick B. Van Vorst, Walter T. Rosen, and W. A. Underwood, on the brief), for plaintiff in error.

William B. Thompson (Ford W. Thompson, on the brief), for defendants in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The complaint filed in the lower court, the substance of which has been stated, shows by necessary intendment that when the circular of the defendant company was issued it had in stock a limited quantity of the four brands of calico of the plaintiff's manufacture which are therein described. The circular stated, in substance, that the defendant had such calicoes in stock, and the complaint did not deny that fact, but admitted it by averring that "the defendant corporatino had but a small quantity of such goods to sell, and for that rea-

son qualified its offer to sell by inserting in the circular after ,the name of the goods the words, 'as long as they last.' " Moreover, the owner of property, real or personal, has an undoubted right to sell it and to offer it for sale at whatever price he deems proper, although the effect of such offer may be to depreciate the market value of the commodity which he thus offers, and incidentally to occasion loss to third parties who have the same kind or species of property for sale. The right to offer property for sale, and to fix the price at which it may be bought, is incident to the ownership of property, and the loss which a third party sustains in consequence of the exercise of that right is damnum absque injuria. We are thus confronted with the inquiry whether the motive which influenced the defendant company to offer for sale such calicoes of, the plaintiff's manufacture as they had in stock at the price named in its circular, conceding such motive to have been as alleged in the complaint, changed the complexion of the act, and rendered the same unlawful, when, but for the motive of the actor, it would have been clearly lawful. It is common learning that a bad motive—such as an intent to hinder, delay, and defraud creditors, by virtue of St. 13 Eliz. c. 5, and possibly by the rules of the common law—will render a conveyance or transfer of property void which, but for the bad motive, would have been valid. So, also, one who sets the machinery of the law in motion without probable cause, and for the sole purpose of injuring the reputation of another, or subjecting him to loss and expense, is guilty of an unlawful act which would have been lawful but for the improper motive. And one who, by virtue of his situation, has a qualified privilege to make defamatory statements concerning another, may be deprived of the benefit of that privilege by proof that it was not exercised in good faith, but in pursuance of a malicious intent to injure the person concerning whom the defamatory statement or statements were made. Poll. Torts (Webb's Ed.) pp. 331–335, and cases there cited. There is also some authority for saying that one who maliciously (that is, with intent to obtain some personal benefit at another's loss or expense) induces another to break his contract with a third party thereby commits an actionable wrong if special damage is disclosed, although the act done would have been lawful if the wrongful motive had been absent. Lumley v. Gye, 2 El. & Bl. 216; Bowen v. Hall, 6 Q. B. Div. 333; Walker v. Cronin, 107 Mass. 555. And see Poll. Torts (Webb's Ed.) pp. 668–673. Aside from cases of the latter kind, it is a general rule that the bad motive which inspires an act will not change its complexion, and render it unlawful, if otherwise the act was done in the exercise of an undoubted right. Or, as has sometimes been said, "when an act done is, apart from the feelings which prompted it, legal, the civil law ought to take no cognizance of its motive." The question as to how far and under what circumstances a bad purpose will render an act actionable which, considered by itself, and without reference to the purpose which prompted it, is lawful, has been so much discussed since the decision in Allen v. Flood [1898] 1 App. Cas. 1, that it would be profitless to indulge in further comment. It has been well observed that it would be dangerous to the peace of society to admit the doc-

trine that any lawful act can be transformed prima facie into an actionable wrong by a simple allegation that the act was inspired by malice or ill will, or by an improper motive. It is wiser, therefore, to exclude any inquiry into the motives of men when their actions are lawful, except in those cases where it is well established that malice is an essential ingredient of the cause of action, or in those cases where, the act done being wrongful, proof of a bad motive will serve to exaggerate the damages.

The case at bar falls within neither of the exceptions to the general rule above stated,—that, if an act is done in the exercise of an undoubted right, and is lawful, the motive of the actor is immaterial. No one can dispute the right of the defendant company to offer for sale goods that it owned and were in its possession, whether the quantity was great or small, for such a price as it deemed proper. This was the outward visible act of which complaint is made, and, being lawful, the law will not hold it to be otherwise because of a secret purpose entertained by the defendant company to inflict loss on the plaintiff by compelling it to reduce the cost of a certain kind of its prints or calicoes.

Nor is the complaint aided in any respect by reference to the law of conspiracy, since the only object that the defendants had in view which the law will consider was the disposition or sale of certain goods which the defendant corporation had the right to sell; and the means employed to accomplish that end, namely, placing them on the market at a reduced cost, were also lawful.

In the brief filed in behalf of the plaintiff in error it is suggested finally that the complaint may be sustained on the ground that it states a good cause of action for maliciously causing certain persons to break or cancel their contracts with the plaintiff, but we think it quite obvious that the complaint was not framed with a view of stating a cause of action of that nature, and that it is insufficient for that purpose. It does not give the name of any person or corporation with whom the plaintiff had a contract for the sale of its prints which was subsequently broken in consequence of the wrongful acts of the defendant. Neither does it show that it had accepted any orders for goods which the jobber was not privileged to cancel at his pleasure. Nor does it allege any special damage incident to the breach of any particular contract. In view of all the allegations which the complaint contains it is manifest, we think, that it was framed with a view of recovering on the broad ground that the issuance of the circular was unlawful and actionable, provided the motive of the defendant company in issuing it was to occasion loss or inconvenience to the plaintiff.

We are of opinion that the complaint did not state a cause of action, as the trial court held, and the judgment below is therefore affirmed.

SANBORN, Circuit Judge (dissenting). I cannot concur in the opinion of the majority in this case because the petition alleges that the defendants, by their advertisement of the goods manufactured by plaintiff, without any legitimate trade purpose, prevented job-

bers from purchasing goods of the plaintiff, and caused those who had agreed to purchase from it to cancel their orders unless the plaintiff would make them a rebate, so that the plaintiff sustained damage in the sum of $19,000. In my opinion, the gravamen of this cause of action is not the malicious intent or purpose of the defendants, but it is their wrongful act of interfering with the plaintiff's business, of preventing sales that it would have made, and of causing the cancellation of orders to, or contracts of purchase from, the plaintiff already made. This act, without any allegation or averment of intent or purpose, was itself wrongful, unless it was done for a justifiable purpose. The act of interfering with and injuring the trade or business of the plaintiff without justifiable cause entitled the plaintiff to damages. It is conceded that, if the defendants had advertised these prints for any legitimate trade purpose, for the purpose of selling them for gain for themselves, for the purpose of converting them into money because they preferred their advertised price to the goods, or for the purpose of competing in trade with the plaintiff, they would have had a justifiable cause for inflicting upon it the damages of which it complains, and these damages would then have been damnum absque injuria. But, if they had advertised them for any of these purposes, this case would have constituted an exception to the general rule of law. The general rule is that whenever one injures a man's business, profession, or occupation he is liable for the damages he inflicts. The exception is that, where the injury is caused by competition in trade or the lawful exercise of a right which the inflictor has, then the injury is justifiable, and no damages can be recovered. But, where such an injury is inflicted, the presumption always is that the rule, and not the exception, applies, and, if the inflictor would justify, he must show that he falls within the exception. The question in this case, therefore, is not whether or not the motive or intent of the defendants will make acts unlawful which were otherwise lawful, but whether or not the intent and purpose of the defendants will justify an otherwise unlawful act, and excuse them from the payment of damages for which, under the general rule of law, they are liable to the plaintiff. It is whether or not the petition shows that they advertised the goods for legitimate trade purposes, so that their acts fell within the exception, which justifies the infliction of damages, and not under the general rule, which requires them to compensate the plaintiff for the injury they have caused. The opinion of the majority assumes that the defendants advertised the prints for a legitimate trade purpose, so that their acts fell within the exception to the general rule. It overlooks the legal presumption that injury to one's business entitles him to compensatory damages, and the plain averment of the petition that the acts of the defendants were not done for any justifiable cause, but were committed for the sole purpose of inflicting upon the plaintiff the injury they caused. The tenth paragraph of the petition reads in this way:

"Tenth. That the effect of issuing the aforesaid circular of the defendant corporation was to advertise to the retail trade throughout the states of Missouri, Arkansas, Kansas, Texas, Illinois, Indiana, Kentucky, Tennessee, Indian

Territory, Colorado, and New Mexico that the goods named and quoted, manufactured by the plaintiff, could be purchased at a less price from the defendant corporation than they could be from the other jobbers in St. Louis, to whom the plaintiff had sold large quantities of said goods, and to thereby cause the said other jobbers in St. Louis to either cancel their orders, or portions thereof, so as aforesaid given to the said plaintiff for such goods, or, as an alternative, to compel the plaintiff to relabel the goods, and to give a rebate on the price, in order that said jobbers might meet the prices so offered by the circular of said defendant corporation, and to thereby break up, injure, and destroy the sales and trade of the said plaintiff in the market of St. Louis and the country tributary thereto, and to make the said other jobbers in St. Louis afraid to deal in the said goods of this plaintiff except at greatly reduced prices, and then in comparatively small quantities; and upon information and belief the plaintiff alleges that the quotations of this plaintiff's said goods in the said circular were made by the said defendants with the end and object in this paragraph stated, and not for any legitimate trade purpose."

Now, no one will dispute the rules of law that the plaintiff in this action had the right to conduct its business of manufacturing and selling prints without the injurious interference of strangers, and that the defendants were subject to the universal rule that they must so use their own property and rights as to inflict no unnecessary injury upon their neighbors. The averments of this petition are that they were not using any of their property or exercising any of their rights for any legitimate trade purpose, but that they were using them for the express purpose of inflicting injury upon the plaintiff, and that they succeeded in imposing the infliction. These allegations seem to me to bring this case under the general rule of law, and to clearly negative the claim that it falls within the exception. They seem to state a good cause of action. The principle upon which this conclusion rests is nowhere better stated than by Chief Justice Holt in the old case of Keeble v. Hickeringill, 11 East, 574, note where the plaintiff recovered damages from the defendant for firing guns on his own land which frightened wild ducks away from the decoy pond of the plaintiff, where the latter was taking them to sell for gain. He said:

"Where a violent or malicious act is done to a man's occupation, profession, or way of getting a livelihood, there an action lies in all cases. But if a man doth him damage by using the same employment,—as, if Mr. Hickeringill had set up another decoy on his own ground near the plaintiff's, and that had spoiled the custom of the plaintiff,—no action would lie, because he had as much liberty to make and use a decoy as the plaintiff. This is like the case of 11 Hen. IV. p. 47. One schoolmaster sets up a new school to the damage of an ancient school, and thereby the scholars are allured from the old school to come to his new. (The action there was held not to lie.) But, suppose Mr. Hickeringill should lie in the way with his guns, and fright the boys from going to school, and their parents would not let them go thither, sure that schoolmaster might have an action for the loss of his scholars. 29 Edw. III. p. 18. A man hath a market, to which he hath toll for horses sold. A man is bringing his horse to market to sell. A stranger hinders and obstructs him from going thither to the market. An action lies because it imports damage. Action upon the case lies against one that shall by threats fright away his tenants at will. 9 Hen. VII. pp. 7, 8; 21 Hen. VI. p. 31; 14 Edw. IV. p. 7." 11 East, 576, note.

In the case of Mogul Steamship Co. v. McGregor, 21 Q. B. Div. 544–553, Chief Justice Coleridge said:

"But it is said that the motive of these acts was to ruin the plaintiffs, and that such a motive, it has been held, will render the combination itself wrong-

ful and malicious, and that, if damage has resulted to the plaintiffs, an action will lie. I concede that, if the premises are established, the conclusion follows. It is too late to dispute, if I desired it, as I do not, that a wrongful and malicious combination to ruin a man in his trade may be ground for such an action as this.".

In the same case upon appeal (23 Q. B. Div. 598), all of the judges were of the opinion that, if the acts done in pursuance thereof were shown to have been for the purpose of ruining and destroying the plaintiff's trade, then an action for the damage occasioned could be maintained. Bowen, J., at page 614, says:

"No man, whether trader or not, can, however, justify damaging another in his commercial business by fraud or misrepresentation. Intimidation, obstruction, and molestation are forbidden. So is the intentional procurement of a violation of individual rights, contractual or otherwise, assuming always that there is no just cause for it. The intentional driving away of customers by show of violence (Tarleton v. McGawley, Peake, 270), the obstruction of the actors on the stage by a preconcerted hissing (Clifford v. Brandon, 2 Camp. 358; Gregory v. Brunswick, 6 Man. & G. 205), the disturbance of wild fowls in decoys by firing of guns (Carrington v. Taylor, 11 East, 571, and Keeble v. Hickeringill, Id. 574, note), the impeding or threatening servants or workmen (Garret v. Taylor, Cro. Jac. 567), the inducing persons under personal contract to break contracts (Bowen v. Hall, 6 Q. B. Div. 333, and Lumley v. Gye, 2, El. & Bl. 216), all are instances of such forbidden acts."

In Walker v. Cronin, 107 Mass. 555, 562, an action for molesting, obstructing, and hindering the plaintiffs from carrying on their business of the manufacture and sale of boots and shoes by persuading employés to abandon the employment of the plaintiffs, and persons who were about to enter their employment not to do so, the supreme court of Massachusetts sustained the action, and said:

"The general principle is announced in Com. Dig. 'Action on the Case,' A.: 'In all cases where a man has a temporal loss or damage by the wrong of another, he may have an action upon the case to be repaired in damages.' The intentional causing of such loss to another without justifiable cause, and with the malicious purpose to inflict it, is of itself a wrong. This proposition seems to be fully sustained by the references in the case of Carew v. Rutherford, 106 Mass. 1, 10, 11."

The court then cites the cases to which reference has already been made, and that class of cases which holds that a man may dig on his own land for water, although he thereby cuts off the supply of water from his neighbor's well, and then says at page 564:

"Every one has a right to enjoy the fruits and advantages of his own enterprise, industry, skill, and credit. He has no right to be protected against competition, but he has a right to be free from malicious and wanton interference, disturbance, or annoyance. If disturbance or loss come as a result of competition, or the exercise of like rights by others, it is damnum absque injuria, unless some superior right by contract or otherwise is interfered with. But, if it come from the merely wanton or malicious acts of others, without the justification of competition or the service of any interest or lawful purpose, it then stands upon a different footing, and falls within the principle of the authorities first referred to."

The proposition is sustained by respectable authority; it is just, and I believe it is sound,—that an action will lie for depriving a man of custom (that is, of possible contracts), when the result is effected by persuasion as well as when it is accomplished by fraud or force, if the harm is inflicted without justifiable cause, such as

competition in trade.    Walker v. Cronin, 107 Mass. 555, 565; Morasse
v. Brochu, 151 Mass. 567, 25 N. E. 74, 8 L. R. A. 524; Hartnett v.
Association, 169 Mass. 229, 235, 47 N. E. 1002, 38 L. R. A. 194; Delz
v. Winfree, 80 Tex. 400, 405, 16 S. W. 111; Doremus v. Hennessy,
62 Ill. App. 391, 403; Van Horn v. Van Horn, 52 N. J. Law, 284,
20 Atl. 485; Temperton v. Russell, 62 Law J. (Q. B. Div. 1893) 412,
419.

Under the legal principles to which reference has been made, and
under the authorities which have been cited, the petition in this case
states a good cause of action for interference with and injury to the
business of the plaintiff by preventing it from obtaining custom it
would otherwise have obtained, without any justifiable cause or ex-
cuse, and for this reason the demurrer should have been overruled,
and the case sent to trial.

There is another reason why the judgment below should be re-
versed.   It is that the petition sufficiently states a cause of action
for maliciously interfering with contracts between jobbers in St.
Louis and the plaintiff, and inducing the former to break their con-
tracts to the injury of the latter.    The petition alleges that the de-
fendants were jobbers in the city of St. Louis, that they issued the
circular, that its effect was "to thereby cause the said other jobbers
in St. Louis to either cancel their orders, or portions thereof, so as
aforesaid given to the said plaintiff for such goods, or, as an alter-
native, to compel the plaintiff to relabel the goods, and to give a re-
bate on the price, in order that said jobbers might meet the prices so
offered by the circular of said defendant corporation, and to thereby
break up, injure, and destroy the sales and trade of the said plaintiff
in the market of St. Louis and the country tributary thereto."    Here
is a plain allegation that contracts had been made for the sale of
these goods to the other jobbers in St. Louis, and that the acts of
the defendant corporation induced them to break their contracts, or
to compel the plaintiff to lose a portion of the price agreed upon
therein as a condition of their performance.    Whenever one mali-
ciously interferes in a contract between two parties, and induces one
of them to break the contract to the injury of the other, the injured
party may maintain an action against the wrongdoer for his dam-
ages.    Angle v. Railway Co., 151 U. S. 1, 13, 14 Sup. Ct. 240, 38 L.
Ed. 55; Lumley v. Gye, 2 El. & Bl. 216; Bowen v. Hall, 6 Q. B. Div.
333, 337; Green v. Button, 2 Cromp., M. & R. 707; Walker v. Cronin,
107 Mass. 555; Benton v. Pratt, 2 Wend. 385; Rice v. Manley, 66
N. Y. 82; Jones v. Stanly, 76 N. C. 355, 356; Tasker v. Stanley, 153
Mass. 148, 26 N. E. 417, 10 L. R. A. 468; Temperton v. Russell, 62
Law J. (Q. B. Div. 1893) 412, 419.    For the reasons which have now
been briefly stated, the judgment below should, in my opinion, be
reversed, and the defendants should be required to answer the pe-
tition.